**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

MICHAEL CHARLES BATIE,

      Defendant-Appellee.

No. 04-4299

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:03-CR-351 TS)**

---

Elizabethanne C. Stevens, Assistant United States Attorney (Paul M. Warner, United States Attorney and Barbara Bearnson, Assistant United States Attorney with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellant.

Mary C. Corporon, of Corporon, Williams & Bradford, P.C., Salt Lake City, Utah, for Defendant-Appellee.

---

Before **McCONNELL**, **McKAY,** and **TYMKOVICH**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

     Michael Charles Batie was indicted on May 15, 2003 for armed bank robbery and for brandishing a firearm while committing a crime of violence.

After seventeen months and three mistrials the district court granted Mr. Batie's motion to dismiss the indictment with prejudice for violations of his constitutional rights to a speedy trial and due process. The government appeals and we **REVERSE**.

## I.

Mr. Batie was indicted on May 15, 2003 for an armed robbery that took place on March 27, 2003. Witnesses at the scene gave police a partial description of the disguised robber and a partial license plate number for his black Jeep Cherokee; this information led police to Mr. Batie, who was ultimately indicted. The magistrate ordered Mr. Batie detained pending trial because he was on federal supervised release when the robbery took place. Trial was set for July 30, 2003, but the trial date was continued on Mr. Batie's motion. The first trial began December 9, 2003. It ended in a mistrial on December 11, 2003, when a government witness testified that he had first met Mr. Batie in federal prison.[1]

_____

[1]The prosecutor's question was not obviously designed to elicit information regarding Mr. Batie's prior criminal history:
  Q. How did you come to know [Mr. Batie]?
  A. I met him in Colorado with my then girlfriend's family at the federal penitentiary where he—
  [Objection by defense counsel]
Appellant App. Vol. I 164. The prosecutor indicated that she anticipated an answer about the witness's interactions with the defendant in Utah, not in prison in Colorado. *Id.* at 166.

The court set the next trial date for March 1, 2004, but the trial was continued on the parties' joint motion until May 11. On March 4, 2004, Mr. Batie moved to dismiss the indictment against him on the basis of double jeopardy; this motion was denied on April 21. The trial moved forward on its appointed date, only to end in a mistrial on May 12 when a juror saw Mr. Batie walking through a hallway in handcuffs. On May 17, Mr. Batie again moved for a dismissal of the indictment, this time claiming violations of his constitutional rights under speedy trial, due process, and double jeopardy provisions.

## II.

The Sixth Amendment to the United States Constitution guarantees the right of criminal defendants to a "speedy and public trial." U.S. Const. amend. VI. The district court held that the seventeen and one-half month delay that had passed since Mr. Batie's indictment and "the accompanying tortu[ous] procedural history" violated this right. We review de novo the district court's dismissal of the indictment based on a constitutional violation of the speedy trial right. In determining whether a delay violates a defendant's right to a speedy trial, the Supreme Court has instructed us to balance 1) the length of the delay, 2) the reason for the delay, 3) the defendant's assertion of—or failure to assert—his right, and 4) any prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). None of these four factors is, by itself, "a necessary or sufficient

condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533.

Instead, we consider these factors together with any other relevant circumstances.

*Id.*

A. *Length of Delay*

The first factor, length of delay, functions as a gatekeeper. We examine

these other factors only if a delay is long enough to be presumptively prejudicial.

*Id.* at 530; *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Delays

approaching one year generally satisfy the requirement of presumptive prejudice.

*Doggett*, 505 U.S. at 652 n.1; *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir.

2004). The length of delay is measured from the time at which the speedy trial

right attaches: the earlier of either arrest or indictment. *United States v. Marion*,

404 U.S. 307, 320-21 (1971); *Jackson*, 390 F.3d at 1261. Mr. Batie was indicted

on May 15, 2003, seventeen and one-half months before the district court

dismissed the indictment. This delay, exceeding one year, was presumptively

prejudicial.

Once a defendant establishes presumptive prejudice, we must examine "the

extent to which the delay stretches beyond the bare minimum needed to trigger

judicial examination of the claim," as well as the remaining factors. *Doggett*, 505

U.S. at 651–652. This inquiry is relevant because the length of delay depends on

"the peculiar circumstances of the case," *Barker*, 407 U.S. at 530-31, and "the

-4-

presumption that pretrial delay has prejudiced the accused intensifies over time," *Doggett*, 505 U.S. at 652. Thus, less delay is tolerated for ordinary street crimes, and more delay for complex conspiracy charges. *Barker*, 407 U.S. at 531. The government should not have needed over seventeen months to prepare a case against Mr. Batie for armed bank robbery and brandishing a firearm. *Cf. United States v. Santiago-Becerril*, 130 F.3d 11, 22 (1st Cir. 1997) (fifteen month delay in prosecuting case for the wrongful taking of a motor vehicle with force resulting in death and for knowing use of a firearm in relation to a crime of violence was arguably sufficient to "tip the scales slightly in favor" of the defendant's speedy trial claim). Accordingly, the length of delay weighs in Mr. Batie's favor.

B. *Reasons for the Delay*

The reason for a delay weighs against the government in proportion to the degree to which the government caused the delay. A deliberate attempt to delay a trial in order to secure a strategic advantage will weigh heavily against the government, while valid reasons will justify a delay. *Barker*, 407 U.S. at 531. Between these two poles lie many reasons for delays for which the government bears responsibility, even when the government did not intend the delays. Negligence and crowded court dockets, for example, weigh against the government, but less heavily than delays deliberately sought to gain improper advantage. *See id.* In contrast, continuances and other motions filed by the

defendant do not weigh against the government. *See United States v. Tranakos*, 911 F.2d 1422, 1428 (10th Cir. 1990).

Roughly eight months, or nearly half, of the delay of which Mr. Batie complains was consumed by defendant's motions for continuances (one of which was joint) and dismissal, and this period weighs against the government not at all. The government argues that four months' delay was caused by Mr. Batie's motions for mistrials and seems to blame him for the delay. However, this time must weigh against the government, although less heavily than deliberate misconduct. *See Barker*, 407 U.S. at 531. Another month passed, over the government's objection, while the court considered Mr. Batie's final motion to dismiss. This delay also must weigh, however lightly, against the government. The district court found that there had been no government wrongdoing and that "[t]he parties and the Court [had] diligently attempted to reach a jury verdict." Nonetheless, the delays attributable to the government must be considered, even when they do not weigh heavily against the government. *See United States v. Gomez*, 67 F.3d 1515, 1522 (10th Cir. 1995) (delay resulting from two continuances requested by the government and consented to by the defendant and from one continuance ordered sua sponte by the court weighed lightly against the government where there was no evidence of government misconduct).

C. *Assertion of the Speedy Trial Right*

-6-

Perhaps most important is whether the defendant has actively asserted his right to a speedy trial. This is not satisfied merely by moving to dismiss after the delay has already occurred. Such a motion could be, indeed may well be, strategic. The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch. *See Barker*, 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."); *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994) (finding that the third factor weighed against a defendant who moved for a continuance and acquiesced when the trial date was vacated twice); *Tranakos*, 911 F.2d at 1429 ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire."). Mr. Batie had moved for and received two continuances, one of which was jointly sought, before his first motion to dismiss on speedy trial grounds. Even after moving (for the first time) to dismiss the indictment for a violation of his right to a speedy trial, Mr. Batie moved a third time to continue the trial. This motion was granted *over the government's objection*. Mr. Batie's persistent requests for

continuances, even when opposed, scarcely demonstrate a desire for a speedier process.[2]  Thus, this factor weighs against Mr. Batie.

D. *Prejudice*

We assess prejudice in light of the particular evils the speedy trial right is intended to avert: "pretrial incarceration; . . . anxiety and concern of the accused; and . . . the possibility that the defense will be impaired."  *United States v. Kalady*, 941 F.2d 1090, 1095 (10th Cir. 1991) (citing *Barker*, 407 U.S. at 532). The most serious of these is impairment of the defense "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.  Mr. Batie does not argue that he suffered any unusual anxiety from the delay, and he was released from pre-trial detention following the third mistrial.  Mr. Batie finds prejudice in the fact of three mistrials and the effect those mistrials have had on the memories of government witnesses. Ordinarily, the failure of a government witness's memory benefits, rather than prejudices, a defendant's case.  *See Barker*, 407 U.S. at 521; *Tranakos*, 911 F.2d

---

[2]At oral argument, Mr. Batie's counsel stated that the third (opposed) continuance had been requested to ensure the availability of an expert witness and suggested that a defendant should not be forced to choose between two constitutional rights.  There is nothing to suggest that Mr. Batie was placed in this unenviable position.  Absent evidence that this expert's qualifications were unique, criminal defendants do not enjoy the right to a particular expert witness, and a defendant anticipating a speedy trial motion would be well advised to make sure his own case is ready to proceed.

at 1429. But Mr. Batie contends that testifying repeatedly has permitted government witnesses to "becom[e] educated about the case, and frustrated." Mr. Batie cites numerous examples of subtle shifts in the testimony of government witnesses over the course of three trials. These appear relatively minor. Moreover, even if these changes are as significant as Mr. Batie suggests, there is no reason to believe they could not be effectively exposed during cross-examination, and thus used to the advantage of the defense.[3]

Mr. Batie also argues that it was not merely the content of witness testimony that changed, but the manner in which testimony was given. If a witness delivers his testimony with greater assurance and specificity with each re-telling, the government's case could indeed be improved by successive mistrials. An analysis of such alterations must be made in the first instance, however, by a court with an opportunity to observe the witnesses as they progress through the trials. It is incumbent upon counsel anticipating such an argument on appeal to urge the argument first in the trial court in order to develop a record suitable for review. The district court here made no rulings regarding any changes, whether of substance or manner, in the testimony of government witnesses. There is

---

[3]Mr. Batie's counsel suggested that he would be prejudiced by references to earlier trials. It is not clear why prejudice would result from the jury's knowledge that the government had already tried and failed to secure a conviction. Indeed, the jury's awareness that another jury had failed to reach a verdict could work to Mr. Batie's advantage.

accordingly nothing in the record that would permit us to reach the result for which Mr. Batie asks.

Taken together, the *Barker* factors do not warrant dismissal. Commencing three trials in just over a year suggests reasonable alacrity rather than deplorable delay. Absent extraordinary circumstances, *Barker* counsels us not to find a violation of the right to a speedy trial when the defendant's actions indicate he had no desire for a speedy trial. The absence of prejudice also cuts against finding a violation of the right. Dismissing an indictment is a drastic remedy, and an unsuitable one where delay has endangered none of the interests the speedy trial right is intended to protect—not even the desire for a speedy trial.

### III.

In addition to a speedy trial violation, the court found that a fourth trial would be a violation of Mr. Batie's substantive due process rights. We review the district court's dismissal on that ground de novo. *United States v. Thody*, 978 F.2d 625, 628 (10th Cir. 1992). Substantive due process "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotation marks and citations omitted). The district court found no government misconduct, but held that misconduct was not required

for dismissing an indictment on due process grounds: "The standard is simply that some government action deprives a defendant of his right to due process under the Fifth Amendment to a degree that shocks the conscience." Appellant App. Vol. I 158 (internal quotation marks omitted).

We disagree with the district court that government action producing delay in trial could "shock the conscience" without even rising to the level of affirmative misconduct. Certainly this is not such a case. In the context of pre-indictment delay, this Court has held that, to warrant dismissal, a defendant must demonstrate the government's delay was intentional and purposeful: "more than ordinary negligence on the part of Government representatives must be shown, no matter how high the actual proof of prejudice is." *United States v. Comosona*, 614 F.2d 695, 696 n.1 (10th Cir. 1980). One circuit has confronted the question of post-indictment delay, and has concluded that a dismissal on substantive due process grounds requires both prosecutorial misconduct and substantial prejudice. *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993) (finding that the shocks-the-conscience standard was not met where delay was caused by incompetence rather than intentional deception). Indeed, the Ninth Circuit held that the remedy of dismissal requires not only misconduct, but egregious misconduct. "To warrant dismissal on due process grounds, government conduct

must be so grossly shocking and outrageous as to violate the universal sense of justice." *Id.*.

The due process violation on which the district court relied in this case had nothing to do with government misconduct, but instead related to the perceived weakness of the government's case. The district court stated that it "would be inconsistent with the 'concept of ordered liberty' . . . and would arguably 'shock the conscience'" to try Mr. Batie a fourth time "when the government's prospects of a conviction are so sparse." Appellant App. Vol. I 158-59. However, determining whether to prosecute is a decision ordinarily entrusted to prosecutorial, rather than judicial discretion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in his discretion."); *United States v. Lai Ming Tanu*, 589 F.2d 82, 90 (2d Cir. 1978) (finding that retrial after two trials ended with deadlocked juries did not violate due process and acknowledging that the district court could not infringe on the duties and prerogatives of the prosecutor by dismissing the case). In the event that an overzealous prosecutor brings a case with insufficient evidence to support it, the rules of criminal procedure provide the district court with a mechanism to prevent the case from being submitted to a jury. *See* Fed. R. Crim. P. 29(a). Any

prejudice resulting from the prosecution of a case with insufficient evidence to support the charges could therefore be mitigated by filing a Rule 29(a) motion at the appropriate time. Because either defense counsel did not file such a motion, or the district court denied it,[4] we must infer that there was sufficient evidence to support the charges against Mr. Batie and that he will not be prejudiced by retrial. Accordingly, subjecting Mr. Batie to a fourth trial is not inconsistent with the "concept of ordered liberty" and does not "shock the conscience."

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's decision dismissing the indictment and **REMAND** this case to the district court for a new trial on the charges contained in the May 15, 2003 indictment.

---

[4] The appellate record is ambiguous as to whether defense counsel filed a Rule 29 motion during the third trial. The trial transcript indicates that the district court scheduled a hearing on the Rule 29 motion, but the record does not include a transcript of such a hearing or documents filed in support of that motion.