**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JOHN GOULD,

     Defendant-Appellant.

No. 11-2057

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:03-CR-02274-JB-1)**

---

Stephen D. Aarons of Aarons Law Firm PC, Santa Fe, New Mexico, for Defendant-Appellant.

Lisa J. Stark, Attorney, (Thomas E. Perez, Assistant Attorney General; Jessica Dunsay Silver, Principal Deputy Chief, with her on the brief), U. S. Department of Justice, Civil Rights Division, Appellate Section, Washington, DC, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **BALDOCK** and **TYMKOVICH**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

A New Mexico jury convicted John Gould, a former prison guard, of two counts of depriving an inmate of his rights under color of law, in violation of 18 U.S.C. § 242, and two counts of filing a false report, in violation of 18 U.S.C. § 1512(b)(3). These

convictions arose out of Gould's use of excessive force against two inmates in two different detention centers, and his subsequent filing of false reports to cover up the incidents. Gould seeks reversal of his convictions and dismissal of all charges against him, arguing 1) that the delay between his conviction and the entry of final judgment violated his Sixth Amendment right to a speedy trial; and 2) that the district court erred in excluding from evidence three memoranda he wrote. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I

In 2002, Gould was employed as a lieutenant and shift leader at the Doña Ana County Detention Center in New Mexico. On October 16, 2002, Gould asked two officers to move an inmate from one cell to another, and they radioed back that the inmate was resisting. Gould told the officers to standby and wait for him, but they continued to try to move the inmate. Two other officers began to assist them, and then the four officers began assaulting the inmate. Another officer who saw the fight sent out an "officer down" radio call to all the officers in the facility. This officer also joined the assault. Gould responded and arrived to find four or five officers on top of the inmate, with another forty-five officers looking on. Gould twice pepper sprayed the inmate in the face and then assaulted him. The inmate was badly injured, suffering three fractured ribs, a broken elbow, a fractured shoulder, bleeding in the eye, and myriad bruises and abrasions. The following morning, Gould filed a false report about the incident.

In August 2004, a grand jury returned an indictment charging Gould with

2

deprivation of rights under color of law and filing a false report.  Five other officers also filed false reports and were charged, but they ultimately entered into plea agreements and testified against Gould.

The August 2004 indictment also contained two additional charges which arose out of a separate incident that occurred at the Cibola County Detention Center.  There, Gould shot twelve rounds of nonlethal projectiles at a prisoner from close range, causing deep bruising and an infected wound.  As a result of the Cibola County incident, Gould was convicted of deprivation of rights under color of law and filing a false report, but he does not raise any evidentiary challenges regarding those convictions.  But he does argue with respect to all four convictions that the delay between his conviction and sentencing and the final entry of judgment violated his Sixth Amendment right to a speedy trial.[1]

## A.  District court proceedings

We relate the tortured procedural history of this case, which is punctuated by long, inexplicable periods of delay.  After a nine-day jury trial, the jury convicted Gould on all four counts on April 2, 2007.  Eight days later, on April 10, 2007, Gould filed a motion

---

[1]  The Sixth Amendment to the United States Constitution provides:
> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

for a new trial based on alleged Brady violations stemming from the government's failure to produce documents from 2003 regarding the Doña Ana County victim's psychological state. The district court denied the motion on January 2, 2008. Both parties filed several motions to continue sentencing thereafter. On April 16, 2008, the government filed a motion to continue and a motion to disclose to defense counsel a 2005 competency report which again pertained to the same Doña Ana County victim. On March 25, 2009, the court granted the motion to disclose the 2005 competency report. On May 6, 2009, more than one year after his conviction, the district court sentenced Gould to ninety-seven months on each count, with the sentences to run concurrently. On that same date, May 6, 2009, Gould filed a renewed motion for a new trial, which referred to the 2005 competency report. On November 18, 2010, Gould moved for reconsideration of his sentence, based on the delay between his conviction and his sentencing and on the continuing delay between his sentencing and the entry of final judgment. The district court entered the final judgment on January 19, 2011, 623 days after his sentencing and 1388 days after his conviction. The district court denied Gould's motion for reconsideration on February 23, 2011 and his renewed motion for a new trial on March 16, 2011. Thereafter, Gould filed a timely notice of appeal.

Throughout the period that elapsed from his conviction until entry of final judgment, Gould was held in administrative segregation. He was placed in administrative segregation for his own protection because of his past employment as a prison guard. Gould was housed in a single cell for twenty-three hours each day, removed only for

4

exercise or showers. Gould maintains that, had the final judgment been entered earlier, he would have been transferred to a Bureau of Prisons facility where only inmates with law enforcement backgrounds are held, and he would have been allowed to move from administrative segregation to general population. Indeed, since entry of judgment, he has been transferred to such a facility and placed into the general population. He has also advanced to trustee status, a designation that offers an inmate some additional freedoms.

## II

Gould raises two issues. First, he seeks "appropriate relief"[2] on the grounds that the trial court violated his Sixth Amendment right to a speedy trial by delaying imposition of his sentence.[3] Second, he seeks reversal of his convictions on the grounds that the

---

[2] Gould does not specify the "appropriate relief" he seeks. Gould first raised his speedy trial claim in a motion for reconsideration, and the district court correctly concluded that it lacked the power to modify his sentence. See United States v. Mendoza, 118 F.3d 707, 709 (10th Cir. 1997) ("A district court does not have the inherent power to modify a previously imposed sentence; it may do so only pursuant to statutory authority."); 18 U.S.C. 3582(c) (giving district courts authority to modify a sentence in three circumstances: upon motion of the Director of the Bureau of Prisons, under Rule 35 or other Federal Rules of Criminal Procedure, or where the Sentencing Commission has lowered the sentencing range). Courts may reduce a prisoner's sentence for a Sixth Amendment violation, but only when the prisoner seeks the reduction under a statute granting the court such authority. For example, a prisoner may seek resentencing in a habeas petition based on a Sixth Amendment violation. See, e.g., Burkett v. Fulcomer, 951 F.2d 1431 (3d Cir. 1991). In the present procedural setting, our power is limited; the only relief we could possibly grant would be to dismiss the charges against him, and given that the delay here is post-conviction, even that is questionable. United States v. Seltzer, 595 F.3d 1170, 1181 (10th Cir. 2010) (affirming district court's dismissal with prejudice of charges against a defendant due to a two-year preconviction delay).

[3] Gould includes the phrase "due process" in his statement of issues on appeal, but then only cites the Sixth Amendment in support of his argument. The Sixth Amendment

(continued...)

5

district court erred in excluding as hearsay several memoranda Gould had written.

### A. *The district court did not violate Gould's Sixth Amendment right to a speedy trial.*

#### 1. Standard of review

We review Gould's Sixth Amendment claim de novo, but accept the district court's factual determinations unless clear error is shown. United States v. Seltzer, 595 F.3d 1170, 1175 (10th Cir. 2010); United States v. Lampley, 127 F.3d 1231, 1239 (10th Cir. 1997). A district court's factual finding is clear error only if it "is simply not plausible or permissible in light of the entire record on appeal." United States v. Garcia, 635 F.3d 472, 478 (10th Cir. 2011).

#### 2. The Period of delay

The parties disagree about how we should calculate the period of delay, and whether all or part of the period from conviction to the entry of final judgment should be considered. Gould argues that the delay totals 1,388 days, which includes the period from his conviction on April 2, 2007, until the court entered judgment on January 19, 2011. Aplt. Br. at 8. The government argues that the delay totals only 765 days, which includes the period from Gould's conviction until his sentencing on May 6, 2009. The government suggests that we not consider the delay between sentencing and entry of the final

---

[3](...continued)
does not offer due process protection, and Gould does not make any the Fifth Amendment due process arguments. Accordingly, we do not address any due process claims. See Fed. R. App. P. 28(a)(9)(A) ("[T]he argument ... must contain ... appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.")

judgment. Aplee. Supp. Br. at 42. In support of this view, the government relies on our statement in United States v. Yehling that "[t]he Sixth Amendment guarantees all criminal defendants the right to a speedy trial; we have applied this right from arrest through sentencing" as the basis for its argument that the Sixth Amendment only requires a speedy trial through sentencing. Id. at 31 (citing Yehling, 456 F.3d 1236, 1243 (10th Cir. 2006)). However, Yehling went on to apply the Sixth Amendment to a period after sentencing, which included consideration of a motion for a new trial. Moreover, Yehling recognized the need to prevent "unreasonable delay from arrest through sentencing and throughout the appellate process." 456 F.3d at 1243. The defendant in Yehling also asserted a Fifth Amendment due process claim, and the opinion could be read as relying on the Fifth Amendment for the extension of the right to a speedy trial to any post-sentencing period. Id. We have not explicitly addressed whether the right to a speedy trial includes the right to a timely entry of judgment. As regards the present case, we will assume without deciding that the right to a speedy trial extends to the entry of final judgment. See Dickey v. Florida, 398 U.S. 30, 44 (1970) (Brennan, J., concurring) ("This Court has assumed, arguendo, but has not decided, that the interval between judgment and sentencing is governed by the [speedy trial] clause."). Thus, in determining whether the delay violated Gould's Sixth Amendment right, we consider the entire 1,388 day period that elapsed from Gould's conviction until the entry of final judgment.[4]

---

[4] As this court has noted, however, "the extension of Sixth Amendment speedy trial safeguards past the transition from accused to convict will not be entirely free of

(continued...)

7

In conducting our speedy trial analysis, we must first address whether we consider the period as a whole, or as two periods: the period between Gould's conviction and sentencing, and the period from sentencing to entry of final judgment. The government and the district court both break the delay into two periods. The district court first looked at the delay from conviction to sentencing, and then separately considered the delay from sentencing to the entry of final judgment. Gould does not explicitly contest the district court's approach, but his arguments address the period as a whole, and not as two separate periods. Aplt. Br. at 14.

We conclude that it is appropriate to consider the period of delay as a whole. The right to a speedy trial is enumerated in the Sixth Amendment. The Sixth Amendment guarantees a speedy trial, which requires the entire trial, start to finish, be speedy. As we are assuming here that the right to a speedy trial extends to the entry of final judgment, we will consider the entire period from conviction to entry of final judgment as a whole, and not on a piecemeal basis.

### 3. The delay did not violate Gould's right to a speedy trial

To determine whether a particular delay violates a defendant's right to a speedy trial, we apply the four-factor test set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972):

> (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. None of the factors are necessary or sufficient;

---

[4](...continued)
doubt until the Court directly examines and resolves the question." Perez v. Sullivan, 793 F.2d 249, 253 n.2 (10th Cir. 1986).

8

> rather, the factors are related and should be considered together
> with other relevant circumstances.

Yehling, 456 F.3d at 1243 (citing Barker, 407 U.S. at 533) (internal citations omitted).

### a. Length of delay

"The first factor, length of delay, functions as a 'triggering mechanism.'" Id. (citing Barker, 407 U.S. at 530). The remaining factors are examined only if the delay is first determined to be long enough to be presumptively prejudicial. Id. Here, both parties agree that the length of delay is sufficient to trigger the remaining Barker factors. Aplee. Supp. Br. at 42; Aplt. Br. at 8, 14.

### b. Reason for delay

We next assess the reason for the delay in this case. As a preliminary matter, we must first determine what portion of the delay resulted from the defendant's actions—a "[d]elay[] attributable to the defendant do[es] not weigh against the government." United States v. Abdush-Shakur, 465 F.3d 458, 465 (10th Cir. 2006). "[T]he reason for the delay[] 'weighs against the government in proportion to the degree to which the government caused the delay.'" Yehling, 456 F.3d at 1244 (quoting United States v. Batie, 433 F.3d 1287, 1291 (10th Cir. 2006)).

The district court determined that Gould bore responsibility for 481 of the 764 days of delay between conviction and sentencing because he had filed three motions for continuance and also delayed his filing of a promised renewed motion for new trial for eleven months. Although the district court noted that the government also filed three unopposed motions for continuance, the district court noted the government's April 16,

2008, motion to continue, which resulted in 343 days of the 481 day delay, was sought to provide Gould time to file the promised renewed motion for new trial. ROA, Vol. 1 at 781. Thus, the district court allotted this period of delay to Gould. Id. In its April 16 motion to continue, however, the government noted that Gould planned to file a renewed motion for new trial upon receiving a mental health evaluation for the Doña Ana County victim. Id. at 649. The government filed a motion to disclose that mental health evaluation on April 16, 2008, concurrent with its motion to continue. Id. at 653. The district court failed to rule on the motion to disclose the mental health evaluation until March 25, 2009. Id. at 664. Therefore, attributing all of the 343 days that elapsed after the government's motion to continue to Gould was clear error, as it appears that the district court's delay in ordering disclosure of the 2005 report prevented Gould from filing his renewed motion for new trial. Id. at 649, 658; Garcia, 635 F.3d at 478. In light of the district court's delay, we determine that the government bears responsibility for the period of delay from April 16, 2008, to March 25, 2009. Gould then bears responsibility for only 138 days of the 764 days of delay between conviction and sentencing.

The district court also found that the remaining delay of 623 days, between sentencing and the entry of the final judgment, was the result of the court's clerical error and thereby attributable to the government. ROA, Vol. 1 at 797. Thus, in total, Gould bears responsibility for roughly ten percent of the delay, while the government bears responsibility for the remaining ninety percent. Because the government is responsible for the bulk of the delay, this factor weighs against the government.

10

However, in determining how heavily the delay weighs against the government, we must also assess the cause of the delay. Purposeful delay or delay to gain advantage weighs heavily against the government, while "[a] more neutral reason such as negligence or overcrowded courts [is] weighted less heavily." Barker, 407 U.S. at 531. Before the district court, Gould expressly declined to allege that the government purposely delayed the proceedings, stating that "this was not purposeful delay or purposeful delay to achieve some sort of a benefit. This is just simple inadvertence and crowded calendars." ROA, Vol. 3 at 281–82; see also id., Vol. 1 at 794 (trial court noting that Gould "[d]oes not assert intentional delay"). Immediately after Gould made this statement, however, the prosecutor told the court that she made periodic telephone inquires about the status of the final judgment, but did not file any motion seeking resolution of the matter, because, "as far as filing anything on the record, frankly, Your Honor, my fear would be to induce exactly what we've got here, to induce [Gould's lawyer] to file a motion saying that there had been some sort of delay that would necessitate further proceedings on this." Id., Vol. 3 at 299. Now, on appeal, Gould points to this statement to argue that the prosecutor may have been purposefully complicit in the delay.

Given the arguments presented before the district court, Gould is now precluded from arguing that the government's delay was attributable to anything other than negligence or inadvertence. After hearing the prosecutor's statement, the district court provided Gould an opportunity for further argument, but Gould did not avail himself of that opportunity. "[F]ailure to raise an argument before the district court generally results

11

in forfeiture on appeal." United States v. Jarvis, 499 F.3d 1196, 1201 (10th Cir. 2007). "Nevertheless, this court has recognized an exception where the argument involves a pure matter of law and the proper resolution of the issue is certain." Id. at 1202. The question Gould now presents is a fact question regarding the government's motivation in allowing the delay and/or purposefully refraining from filing a motion seeking entry of the final judgment, and therefore does not fall within the issue-of-law exception.

While the government caused a majority of the delay in this case, we do not deem the delay purposeful. This factor weighs in Gould's favor, but not heavily.

### c. Defendant's assertion of his right

The defendant's assertion of his right is "[p]erhaps [the] most important" of the four Barker factors. Batie, 433 F.3d at 1291. "[T]he defendant's assertion of the speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." United States v. Dirden, 38 F.3d 1131, 1138 (10th Cir. 1994) (citations and quotations omitted). While a defendant who fails to demand a speedy trial does not inherently waive that right, "[w]e emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532. And the defendant's burden of showing he desired a speedy trial "is not satisfied merely by moving to dismiss after the delay has already occurred." Batie, 433 F.3d at 1291. Thus, if the defendant fails to demand a speedy trial, moves for many continuances, or otherwise indicates that he is not pursuing a swift resolution of his case, this factor weighs heavily against the defendant.

12

In the present case, the district court found that this factor weighed against Gould because Gould made no effort to contact the court for eighteen months after the sentencing on May 6, 2009, until he filed a motion for reconsideration of his sentence on November 18, 2010. ROA, Vol. 1 at 799. This eighteen-month period constitutes the great majority of the twenty-month delay between sentencing and entry of judgment. Moreover, the November 2010 motion, which was filed more than forty-three months after his conviction, was the first time Gould asserted his right to a speedy trial. Id. at 783. Gould's counsel admitted that Gould had not appropriately asserted his right: "I understand that there's some concern that the defendant didn't [assert] his right as much as he should have, and I think that's a fair finding by the court." Id. at 799. As a result of Gould's long delay in asserting his right, this factor weighs heavily against him.

### d. Prejudice to the defendant

"[A] showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, [but] we have great reluctance to find a speedy trial deprivation where there is no prejudice." Perez v. Sullivan, 793 F.2d 249, 256 (10th Cir. 1986). "In fact, it might be said that once a defendant has been convicted it would be the rarest of circumstances in which the right to a speedy trial could be infringed without a showing of prejudice." Id.

"Prejudice is assessed in light of the interests the speedy trial and due process rights were designed to protect: preventing oppressive incarceration, minimizing anxiety and concern of the defendant, and limiting the possibility that the defense will be

13

impaired." Yehling, 456 F.3d at 1244-1245 (quotations and citations omitted). But the prejudice calculus changes once a defendant has been convicted: "once a defendant has been convicted, the rights of society increase in proportion to the rights of the defendant. Post-conviction prejudice therefore must be substantial and demonstrable." Id. (quotations and citations omitted).

When addressing the potential for prejudice to the defendant, the possibility that the defense will be impaired "is the most serious 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" Dirden, 38 F.3d at 1138 (citing Barker, 407 U.S. at 532). We have also given some weight to the anxiety and concern of the defendant, but our cases suggest that we require the defendant to show some "special harm suffered which distinguishes his case." Id. Further, "the anxiety of an accused is not to be equated for constitutional purposes with anxiety suffered by one who is convicted, in jail, unquestionably going to serve a sentence, and only waiting to learn how long that sentence will be." Perez, 793 F.2d at 257.

Finally, once a defendant had been convicted, we have not considered conditions of incarceration when determining prejudice, where a defendant claims that the conditions would have been different after sentencing:

> The benefits arguably available to defendant in [a different] penitentiary are entirely speculative not only concerning whether he would have qualified, but also concerning the extent to which he would have participated or benefited. . . . We decline to attach Sixth Amendment speedy trial dimensions to amenities and benefits a convicted felon might receive in one prison but not another.

14

Id. (footnote and citations omitted). Thus, the prejudice prong of the Barker test presents a high bar for a defendant who has been convicted, and, as previously stated, failure to show prejudice is nearly fatal to a speedy trial claim. Id. at 256.

In the present case, the district court found Gould failed to show that he was prejudiced by the delay in his sentencing and the entry of judgment. Gould did not argue that the delay impaired his defense, relying instead on allegations of psychological harm resulting from his oppressive confinement and the oppressive confinement itself. ROA, Vol. 1 at 784, 789, Vol. 3 at 289–90. This alleged prejudice is foreclosed by our decision in Perez. In that case, as here, the defendant claimed prejudice due to the conditions he encountered in one prison as opposed to the conditions he expected to encounter in another, and we declined to extend speedy trial protection for such speculative claims. Perez, 793 F.2d at 257. Moreover, a inmate has other avenues available to challenge conditions of confinement, which counsels against our extending Sixth Amendment protection to this type of claim. Thus, Gould does not show that he was prejudiced from the delay, which weighs heavily against him.

### e. Assessing the four factors

On the whole, the four factors favor denial of Gould's Sixth Amendment speedy trial claim. While the length of the delay suffices to trigger a Barker analysis, and the reason for the delay weighs lightly in Gould's favor, his failure to adequately assert his speedy trial rights and his inability to show prejudice weigh heavily against him. In particular, because "we have great reluctance to find a speedy trial deprivation where

15

there is no prejudice," his failure to show prejudice alone is nearly fatal to his claim.  Id.

at 256.  Balancing these factors, we must conclude that Gould has not established a Sixth

Amendment speedy trial violation.  While this result is troubling given the lengthy delay

from conviction to the entry of final judgment, a delay which certainly exceeded the norm

of timely criminal case processing, it does not rise to the level of a constitutional speedy

trial violation.

### B. Any district court error in excluding the memoranda was harmless.

Gould argues the district court erred in excluding three memoranda he wrote and

sent to Major Barela, his supervising officer: (1) a memorandum expressing Gould's

concern over pranks by other officers (the prank memorandum), (2) a memorandum

stating Gould's belief that the officers who attempted to extract the prisoner may have

been lying to him about what happened before he arrived (the lying memorandum), and

(3) a memorandum asking for a state police investigation of the altercation with the

prisoner (the investigation memorandum).  In response to objections raised by the

government, the district court held that all three documents were hearsay, offered for the

truth of the matter asserted in the documents, and excluded them.  However, the district

court did allow Gould to testify as to his writing of the memoranda, as well as their

contents.

Gould made no argument for admission of the first report over the government's

objection, but did argue that the second and third documents should have been admitted

under Federal Rule of Evidence (FRE) 106: "[i]f a party introduces all or part of a writing

16

or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Gould sought to admit the documents to provide context for reports offered by the government that contained Gould's false statements about the altercation. On appeal, Gould reasserts his FRE 106 argument, and also argues for the first time that the memoranda should also have been admitted for non-hearsay purposes, to show that Gould had accused other officers of misconduct and called for an investigation. Although Gould also argues that the government objected to the memoranda on relevance grounds, we need not address this argument as we note from the trial transcript only hearsay objections were raised. ROA, Vol. 4, Trial Vol. 7 at 252–54, 287–89, 294–95.

The prank memorandum describes Gould's concern over a series of pranks in 2001 that involved Officers Tagert, Fraembs, and Gonzales, Sergeant Freeland, and Lieutenant Schlender. As a result of the memorandum, Lieutenant Schlender ultimately resigned. Officers Tagert, Fraembs, and Gonzales and Sergeant Freeland all testified against Gould at trial, although Gould only questioned Sergeant Freeland about the prank memorandum. She stated that she believed Gould was not an honest person, based largely on her belief that his statements in the prank memorandum were dishonest. Sergeant Lopez, who also testified against Gould, stated that she had heard about the memorandum and Lieutenant Schlender's subsequent resignation, and testified that she was intimidated by Gould. During his own testimony, Gould sought to introduce the prank memorandum after

17

testifying as to its contents.  After the government's hearsay objection, Gould did not counter the objection but simply moved on.  On appeal, Gould argues that the prank memorandum should have been admitted to show that he had reported the officers' prior alleged misbehavior, which would suggest that they had a reason to dislike and testify against him.

The lying memorandum expresses Gould's concern that the officers who were already fighting with the inmate when Gould arrived may have lied to him about events leading up to the altercation.  Hoping to show his good intentions and to counter the false report charges, Gould sought to admit the memorandum to show that he expressed his misgivings about the incident almost immediately after it ended.  When the government objected on hearsay grounds, Gould argued first that the document went to his state of mind and then that the document should be allowed in under FRE 106.

The investigation memorandum apparently indicates that Gould wanted an outside investigation of the altercation, and Gould sought to offer it to show that he wanted a thorough investigation, not a coverup.  Although we granted Gould's motion to supplement the record on appeal with the three excluded memoranda, only two of the excluded memoranda have been provided.  An unrelated memorandum on guard training methods was submitted instead of  the investigation memorandum.[5]  Supp. ROA at 2.

_____

[5] Gould refers to the guard training memorandum and discusses its content in his brief.   Aplt. Br. at 2.  He then references the investigation memorandum, as if the investigation memorandum were the memorandum he had just discussed.  Id.  The two memoranda are clearly different, however, and the guard training memorandum does not

(continued...)

18

Although our review of the investigation memorandum's exclusion would have been facilitated by its inclusion in the record on appeal, the trial transcripts contain sufficient information about the contents of the memorandum for us to consider the issue.

Even if we were to assume that the exclusion of all three memoranda was error, the error was harmless. "A non-constitutional error, such as the admission or exclusion of impeachment evidence, is subject to harmless error analysis." United States v. Clifton, 406 F.3d 1173, 1179 (10th Cir. 2005). "[A] non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." Id. (quoting United States v. Griffin, 389 F.3d 1100, 1104 (10th Cir. 2004)). The court allowed Gould to testify in detail as to the contents of all three memoranda. Further, the contents of the memoranda were not disputed; the government's witnesses ratified Gould's testimony about the memoranda. For example, Sergeant Lopez testified that Gould repeatedly stated his belief that the officers who had been instructed to move the prisoner were not telling Gould the truth about their actions leading up to the altercation, and officers involved in the beating testified that Gould instigated the investigation against them. The exclusion of evidence is harmless when the substance of the excluded evidence comes before the court through other means. United States v. Bowling, 619 F.3d 1175, 1194 (10th Cir. 2010) (holding exclusion of evidence was

_____

[5](...continued)
appear to have been an issue in the trial. The government pointed out Gould's error, but Gould failed to file any reply brief or otherwise respond in any way to this apparent record mixup.

19

harmless error when the evidence was at most cumulative).

## III

The judgment of the district court is AFFIRMED.