**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DARRICK LOVE,

      Petitioner - Appellant,

v.

RICK RAEMISCH, Executive Director,
CDOC; THE ATTORNEY GENERAL
OF THE STATE OF COLORADO,

      Respondents - Appellees.

No. 14-1470
(D. Colorado)
(D.C. No. 1:12-CV-02160-LTB)

---

**ORDER AND JUDGMENT**[*]

---

Before, **HARTZ**, **TYMKOVICH**, and **MORITZ**, Circuit Judges.

---

      Darrick Love, a Colorado prisoner, seeks a certificate of appealability (COA) to

appeal the denial of his application for relief under 28 U.S.C. § 2254. *See* 28 U.S.C.

---

[*] After examining the brief and appellate record, this panel has determined unanimously to honor the party's request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 2253(c)(1)(A) (requiring COA to appeal denial of relief under § 2254). He alleges (1) the denial of his federal constitutional right to a speedy trial, (2) prosecutorial misconduct delaying the trial date, and (3) the denial of his right to represent himself at trial. We grant a COA on all issues but, exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), affirm the denial of his application.

## I.      BACKGROUND

In 1999 Love was charged in Colorado state court with first-degree murder after deliberation, felony murder, and robbery. The jury acquitted him on the charges of felony murder and robbery, convicted him of the lesser offense of theft, and could not reach a verdict on the first-degree-murder charge. Love was retried on first-degree murder and convicted of the lesser-included offense of second-degree murder. He was sentenced to 48 years in prison for the murder and six years for the theft, but the Colorado Court of Appeals (CCA) reversed the murder conviction. According to Love, the mandate was received by the state trial court on January 21, 2005. Love thus had to be retried by July 21, 2005, to comply with Colorado's speedy-trial statute. *See* Colo. Rev. Stat. 18-1-405(2) (2014) (trial must commence within six months of trial court's receipt of mandate from appellate court).

Love was not brought before a judge until July 11, 2005, little more than a week before the expiration of the speedy-trial period. He was informed that his trial was set for July 18. The attorneys who had represented him in his prior trials were no longer with

2

the public defender's office and he had not yet obtained counsel, leaving him in a

difficult situation, as he and the judge understood:

[Love]: Now I'm forced and put in a position to waive my speedy trial, or have . . . a fair trial, and it's my right to have a fair trial and effective counsel. I shouldn't be forced by due process of law to have to barter one for the other.

[Judge]: You're not. The statute says that you get a trial date within six months of the date the mandate was received. You did.

[Love]: Okay.

[Judge]: So that gives you . . . three choices, as I see it. You can waive your speedy trial and I'll appoint the Public Defender to represent you and they'll get a case worked up. Secondly, I can appoint the Public Defender, they can go to trial with you on Monday—that would be ludicrous for both of you—or you can represent yourself, which would be crazy. So—but those are the picks you've got, because the statute's being compiled with. Statute says you're to be given a trial date within six months of the date the mandate's received and you were.

[Love]: All right. And I understand that part, Your Honor, but just because this man stands here and says that he's ready to proceed, and I have a trial date of January 21st, my thing is this. All this time that I've been sitting, 167 days, I could have been getting prepared. I would have no problem with that if counsel would have been coming out there seeing me, and I could have been prepared, and then I would be ready to go. I shouldn't be forced to have to waive my speedy trial. I mean, I don't know if this man is ready or not, you know.

[Judge]: He's an officer of the Court. If he's telling me he's ready to go to trial, he's ready to go to trial.

[Love]: Well, I'm ready to go. I'm not going to waive my speedy trial.

[Judge]: You want to—want me to—appoint the Public Defender or do you want to represent yourself?

[Love]: Appoint the Public Defender.

3

[Judge]: All right. The defendant has requested the services of the Public Defender.

R. at 49–50. One of the public defenders attending the hearing responded, "Judge, we cannot be effective in one week on a murder trial." *Id.* at 50.

The hearing recessed for four hours while the public defenders reviewed Love's case to better ascertain when they could be ready for trial. After reconvening, the public defender summarized the complexity of the case and reported that "[f]or us to go to trial on this case on Monday would be just writing ineffective on our foreheads." *Id.* at 55. He concluded, "For that reason we cannot accept appointment for a trial on Monday." *Id.* at 55–56. The judge said, "Well, I guess you get to go to trial by yourself then, Mr. Love." *Id.* at 56. Love replied, "Good, 'cause I'm not going to waive my speedy." *Id.* Confronted with this dilemma, the judge observed that "the defendant is as strongly as he possibly can telling me he wants to go to trial within the current speedy trial limitations. I understand that, but I also understand that sometimes the law puts one between rocks and hard places . . . ." *Id.* at 59. The judge concluded:

> I am going to appoint the Public Defender's office. I'm going to find that under the circumstances there is implied waiver of speedy trial. . . . I understand, Mr. Love, that . . . you object to that procedure, but I'm doing it anyway because part of my job here is to ultimately look out for your best interests, and I feel that's the best thing to do.

*Id.* at 60.

Love was represented by public defenders at his third trial and convicted of second-degree murder. On direct appeal the CCA affirmed, rejecting Love's arguments

4

that his right to a speedy trial and to self-representation were violated, *see People v. Love*, No. 06CA1632 (Colo. App. June 17, 2010) (2-1 decision), *cert. denied*, No. 10SC564, 2011 WL 2463118 (Colo. June 20, 2011).  Love's application for relief under 28 U.S.C. § 2254 and request for a COA were denied by the United States District Court for the District of Colorado.  *See Love v. Clements*, No. 12-cv-02160-LTB, 2014 WL 5092622 (D. Colo. Oct. 9, 2014).  We grant a COA but affirm the denial of Love's application.

## II.  DISCUSSION

### A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted).  Relief is provided under the "unreasonable application" clause only if the state court identifies the correct governing legal principle from the Supreme Court's

5

decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* (internal quotation marks omitted). Thus, a federal court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See id.* Rather, that application must have been unreasonable. "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of a habeas petitioner's request for COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

## B. Speedy Trial

Love's first claim is that his federal constitutional right to a speedy trial was violated. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."). We consider Love's second claim—that prosecutorial misconduct delayed the trial—to be part of the speedy-trial analysis. (Love advances no other federal right as being violated by the alleged misconduct.)

The CCA held that there was no violation of Colorado's speedy-trial statute, but its opinion did not address the constitutional dimension of Love's argument. Even so, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). Love makes no effort to rebut that presumption, so we review the claim under AEDPA's deferential standard. We assume that Love did not waive his constitutional right.

6

Whether a defendant was deprived of his federal constitutional right to a speedy trial requires consideration of four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). None of these factors is necessary or sufficient for finding a deprivation of the right; instead, "they are related factors and must be considered together with such other circumstances as may be relevant" in a "difficult and sensitive balancing process." *Id.* at 533.

The first factor, length of delay, "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530. A delay approaching one year typically meets this requirement. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). In Love's case the state trial court received the mandate ordering a new trial on January 21, 2005, and his trial began on April 19, 2006. This is a presumptively prejudicial delay of 15 months, so we consider all the *Barker* factors.

This first factor does not weigh heavily in Love's favor. Viewing "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim," *id.* at 652, and taking that "bare minimum" to be one year, the extra delay in this case is only three months. This is a far cry from the "extraordinary" five-year delay in *Barker*, 407 U.S. at 533 (in which there was no constitutional violation), or the "egregious" eight-and-a-half-year delay in *Doggett*, 505 U.S. at 657. Love's case was no run-of-the-mill robbery or assault. *See Barker*, 407 U.S. at 531 ("the

7

delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge"). He was charged with the serious offense of second-degree murder, and his second retrial was six days long, with 17 witnesses and more than 130 exhibits. *See Love*, 2014 WL 5092622, at *8. The length of delay thus favors him little.

Under the second factor—the reason for delay—"different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence . . . should be weighted less heavily . . . ." *Id.* (footnote omitted). And delays attributable to a defendant's own actions are ordinarily given no weight. *See United States v. Loud Hawk*, 474 U.S. 302, 316 (1986).

According to the prosecutor present at the hearing at which the trial date was set, Love's case slipped through the cracks and was not noticed until shortly before the expiration of the speedy-trial period. The CCA found that the prosecution did not deliberately or in bad faith delay setting the trial date. Love presents no contrary evidence on appeal, so we will defer to the CCA's finding. *See House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) ("A federal habeas court must presume the state court's factual findings to be correct unless the petitioner rebuts the presumption with clear and convincing evidence." (citing 28 U.S.C. § 2254(e)(1)); *Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015) ("The presumption of correctness [under 28 U.S.C. § 2254(e)(1)]

8

also applies to factual findings made by a state court of review based on the trial record." (internal quotation marks omitted)). Still, insofar as the prosecution's negligence in setting the trial date contributed to the delay, that weighs somewhat in Love's favor. *See Doggett*, 505 U.S. at 657 ("Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.").

Love argues, however, that the prosecution did act in bad faith because it falsely stated that it was prepared to go to trial by the original trial date of July 18, 2005. For this argument to succeed, Love must overcome the state trial judge's statement at the pretrial hearing that "[the prosecutor is] an officer of the Court. If he's telling me he's ready to go to trial, he's ready to go to trial." R. at 50. Love points out, and the record supports him, that at no time during the pretrial hearing did the prosecutor affirmatively say he was ready. This leads him to conclude that the judge's statement was either groundless or the product of improper ex parte communications with the prosecutor. But review of the record shows that even Love understood that the prosecution had indicated it was ready. Shortly before the judge made his statement, Love said that the prosecutors "say that they're ready," *id.* at 49, and that "this man [the prosecutor] stands here and says that he's ready to proceed," *id.* at 50. We must assume that the record is incomplete, and the judge had a reasonable basis for repeating what Love himself had just said.

9

As for actual evidence of the prosecution's unpreparedness, Love presents little. He says that the prosecution needed nearly a year to prepare for trial and that most of the trial witnesses were out of state at the time of the pretrial hearing. But without evidence to support these assertions, we must defer to the CCA's finding that Love's allegations are only speculative. In any event, Love does not explain how the prosecution's assertion of readiness, even if untrue, delayed the trial.

On the other side of the ledger is Love's own tardiness in requesting counsel after his conviction was reversed, which the CCA cited as one of the reasons for his delayed trial. He protests that his failure to fill out a state form requesting representation is not among the exceptions for delay allowed in Colorado's speedy-trial statute. But the issue here is not the Colorado statutory right but the federal constitutional right to a speedy trial. The second *Barker* factor does not strongly favor Love.

The third *Barker* factor—whether the defendant asserted his right to a speedy trial—also does little to help Love. After his conviction was set aside by the CCA, he did nothing to seek a prompt trial setting. And his apparent insistence on a speedy trial at the July 11 hearing appears tactical, either to support a claim for relief because of the prosecutor's delay in seeking a setting or to require the prosecutor to go to trial when it had not lined up witnesses and was otherwise unprepared (as he now alleges). His speedy-trial motion filed less than three weeks later sought, not a prompt setting, but dismissal of the charges. (A pro se motion a few days later sought the same relief.) From then until trial the following April, Love did nothing to suggest a desire for a prompt trial.

10

His demands for a quick trial setting came well before any danger that his constitutional right would be impaired. As we said in *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006):

> Perhaps most important is whether the defendant has actively asserted his right to a speedy trial. This is not satisfied merely by moving to dismiss after the delay has already occurred. Such a motion could be, indeed may well be, strategic. The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch.

In our view, the third *Barker* factor is neutral.

The fourth *Barker* factor is prejudice to the defendant. It requires inquiry into three interests of the defendant protected by the speedy-trial right: (1) "prevent[ing] oppressive pretrial incarceration"; (2) "minimiz[ing] anxiety and concern of the accused"; and (3) "limit[ing] the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Love cannot complain about his pretrial incarceration because he would have been in prison regardless for his theft conviction. We are mindful of the anxiety that a delay in the third trial may have caused him, but more important is the question whether that delay impaired his defense, *see id.*, and he makes no showing whatsoever of that. Although "affirmative proof of particularized prejudice is not essential to every speedy trial claim," *Doggett*, 505 U.S. at 655, the presumption of prejudice is weaker when a delay is shorter. *See id.* at 656 ("presumptive prejudice['s] . . . importance increases with the length of delay"). The presumption has little force in this case, where the time between mandate and trial was 15 months, *cf. United States v. Eight Thousand Eight Hundred & Fifty*

11

*Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 569 (1983) (18-month delay not prejudicial in forfeiture case when claimant "never alleged or show[ed] that the delay affected her ability to defend . . . on the merits"), particularly when the cast of witnesses was familiar because the case had already been tried twice before. The fourth *Barker* factor favors the state.

Evaluating all four *Barker* factors, we cannot say that the state courts' denial of Love's speedy-trial claim was "contrary to, or involved an unreasonable application of, clearly established Federal law." We therefore affirm the denial of relief under § 2254.

### C.      Self-Representation

Love's third claim is that he requested to proceed to trial pro se and the court's refusal to allow him to do so violated his Sixth Amendment right to self-representation. *See Faretta v. California*, 422 U.S. 806 (1975). "To invoke this right, however, a defendant must clearly and unequivocally assert his intention to represent himself, and must do so in a timely manner." *United States v. Callwood*, 66 F.3d 1110, 1113 (10th Cir. 1995) (citations omitted). "The reason that a defendant must make an unequivocal demand for self-representation is that otherwise convicted criminals would be given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel." *United States v. Treff*, 924 F.2d 975, 979 (10th Cir.1991) (internal quotation marks omitted). According to the CCA, Love did not unequivocally demand to represent himself:

12

[Love's] apparent expression of a desire to represent himself, read in context, was an impulsive act borne of frustration with the length of time it was taking to bring him to trial and the Public Defenders' statements that they could not be ready for trial in one week . . . . [Love] had previously been represented by appointed counsel throughout the case, at his behest, and clearly expressed his desire at the July 11 hearing to be represented by court-appointed counsel. That he might represent himself was not even his own idea, but one the court broached when the Public Defenders indicated they could not be ready for trial by July 18. [Love] responded to that idea impulsively. And after he did so, and after the court had indicated that defendant had not waived his right to counsel, defendant did not reassert his desire to represent himself at the hearing.

R. at 240–41.

This was not "an unreasonable determination of the facts in light of the evidence," 28 U.S.C. § 2254(d)(2), nor one contradicted "by clear and convincing evidence," *id.* § 2254(e)(1). Therefore, we affirm the denial of Love's § 2254 application on this ground.

## III. CONCLUSION

We GRANT Plaintiff's request for a certificate of appealability and DENY his application for a writ of habeas corpus. We GRANT his motion to proceed *in forma pauperis*.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

13