<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JAMES BLACK,

     Defendant - Appellant.

No. 15-3111

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:07-CR-10221-MLB-4)**
_____

Howard A. Pincus, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, with him on the brief), Office of the United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.
_____

Before **KELLY**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

     On April 12, 2012, a jury convicted James Black of conspiring to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846; using a telephone in committing or in causing or facilitating the conspiracy, *id.* § 843(b); and possessing with intent to distribute

cocaine, *id.* § 841(a)(1). The convictions stemmed from charges made in the government's Fifth Superseding Indictment in a longstanding, multi-defendant case that began in November 2007. Between the First Superseding Indictment (in which Black was first charged) and the jury trial, the government filed another four superseding indictments and twice dismissed the case—once to pursue an interlocutory appeal and once to avoid dismissal of the cocaine-conspiracy charge. After the jury's verdict, the district court sentenced Black to 30 years' imprisonment.

Black appeals, arguing that the district court plainly erred in calculating the United States Sentencing Guidelines advisory range at 360 months' imprisonment to life. Black also argues that the government's 23-month delay in bringing him to trial—the total delay between the first two indictments that charged Black and their later dismissal, together with the delay between the filing of the second-to-last indictment and Black's trial—denied him his Sixth Amendment right to a speedy trial. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that the government didn't violate Black's constitutional right to a speedy trial. But because we conclude that the district court plainly erred in calculating Black's advisory Guidelines range, we vacate Black's sentence and remand for resentencing.

## BACKGROUND

Because this appeal involves Black's Sixth Amendment right to a speedy trial, we detail this case's procedural history at length, paying special attention to dates.

## A.   Procedural History

### 1.   December 19, 2007–July 30, 2008: First Superseding Indictment (7 months, 11 days)

The government didn't charge Black in its original indictment, filed on November 28, 2007. But on December 19, 2007, the government secured a First Superseding Indictment, charging Black and 8 other defendants with 48 criminal offenses related to their cocaine-distribution network.[1] At Black's arraignment on December 21, the magistrate judge detained Black pending a trial set for March 18, 2008. On February 7, 2008, Black moved to continue the motions-filing deadline, the status conference, and the jury trial. The district court granted Black's motion and reset the trial for May 6.[2]

On March 9, relying on the Fourth, Fifth, and Fourteenth Amendments, Black moved to suppress statements that he had made to law-enforcement officers and statements that he had made during wiretapped telephone conversations with other members of the cocaine-distribution network.[3] Other defendants filed their own

---

[1] The First Superseding Indictment charged Black under Count 1 (conspiring to distribute over five kilograms of cocaine), Counts 10–13 (using a telephone in committing or in causing or facilitating the conspiracy), and Counts 14–17 (possessing with intent to distribute cocaine).

[2] From the appellate record, we can't tell when the district court continued the May 6 trial, though the district-court docket reveals that a continuance must have been granted.

[3] Because Black stated an unusual constitutional claim against what appears to be coconspirator statements recorded during a lawful wiretap, we clarify that Black didn't base this particular motion on Fed. R. Evid. 801(d)(2)(E). Read broadly, his motion seems to allege that police obtained statements from him during a custodial

motions to suppress, and the court set a hearing on all of the suppression motions for April 16. At the hearing, Black orally moved to withdraw his motion to suppress because of ongoing plea negotiations.

On May 2, the government moved for a *James* hearing to determine the admissibility of coconspirator statements under Fed. R. Evid. 801(d)(2)(E). *See generally United States v. James*, 590 F.2d 575 (5th Cir. 1979). On May 16, the court set a change-of-plea hearing for Black on May 21. On May 19, one of Black's codefendants, Michael Biglow, filed a motion to suppress "evidence found in his home, arguing that authorities lacked probable cause to search his residence." *United States v. Biglow*, 562 F.3d 1272, 1275 (10th Cir. 2009). Also on May 19, the court reset Black's change-of-plea hearing for June 2. On June 2, Black pleaded guilty to Counts 1, 14, and 15 of the First Superseding Indictment. The court set Black's sentencing for August 18.

On June 6, the court granted Biglow's motion to suppress. On June 9, the government filed an interlocutory appeal of the court's order granting Biglow's motion to suppress. Because of this interlocutory appeal, the government simultaneously moved to continue the trial or, alternatively, to dismiss the case without prejudice. The court granted the government's motion to dismiss the charges against five defendants without prejudice, but not the charges against Black, presumably because Black had already pleaded guilty. On July 1, Black's attorney

---

interview and during intercepted phone calls in violation of the Fourth, Fifth, and Fourteenth Amendments, as well as *Miranda v. Arizona*, 384 U.S. 436 (1966).

filed a motion to withdraw as counsel, which the court denied after a hearing on July 14. On July 21, Black moved to withdraw his guilty plea, and on July 24 the district court granted the motion. The government then moved to dismiss the charges pending against Black without prejudice, which the court granted on July 30.

Thus, a total of 7 months and 11 days elapsed between December 19, 2007 (when the government first charged Black under the First Superseding Indictment), and July 30, 2008 (when the court dismissed the charges against Black without prejudice).

### 2. May 13, 2009–November 4, 2009: Second Superseding Indictment (5 months, 22 days)

On May 13, 2009, having secured a reversal of the district court's order granting Biglow's motion to suppress, the government filed a Second Superseding Indictment. The Second Superseding Indictment charged 17 defendants with 131 criminal offenses, an expansion of the First Superseding Indictment's charging 9 defendants with 48 crimes.[4] Also on May 13, the government moved to designate the case as complex.[5] On June 4, the district court scheduled a jury trial for August 11.

---

[4] The Second Superseding Indictment charged Black under Count 1 (conspiring to distribute over five kilograms of cocaine); Counts 17, 42, 55, 71, and 87 (using a telephone in committing or in causing or facilitating the conspiracy); and Counts 18, 49, 62, and 90 (possessing with intent to distribute cocaine). The Second Superseding Indictment charged 16 of the 17 defendants under Count 1, including Black.

[5] Although the government notes in its brief that "the district court declared the case complex" on June 26, 2009, citing the Order of Discovery and Scheduling, we don't see this document in the appellate record. Appellee's Resp. Br. at 5. Thus, we can't say whether the district court ultimately granted the government's motion.

5

On June 14, Black was arrested. At his arraignment the next day, the court ordered Black temporarily detained and set a detention hearing for June 17. The court filed an Order of Detention Pending Trial on June 18. On June 30, the court vacated the August 11 trial setting. By July 15, the court had arraigned all of the defendants, appointed them counsel, and provided them with detention hearings.[6]

Between May 28 and August 14, the defendants filed several substantive motions, including two motions to suppress, a motion for a *James* hearing, and a motion for a bill of particulars. On July 23, Black filed a motion requesting drug, alcohol, and psychological evaluations. On August 14, Black filed a motion to sever his trial from that of his codefendants, a motion to join in over ten of his codefendants' substantive motions (including the motion for a *James* hearing), and a motion to suppress statements that he had made to law enforcement officers and statements that he had made during recorded telephone conversations with other members of the cocaine-distribution network.[7] On September 15, the court set the defendants' jury trial for November 3.

On September 15, the court scheduled a hearing for September 22 to hear arguments on Black's motion to suppress. After a September 17 hearing on a number

---

[6] The government says that "[o]btaining the initial appearances of the defendants was complicated by the fact that one was in state custody . . . and two were found hiding out in Oklahoma . . . ." R. vol. 1 at 509–10; *see* Appellee's Resp. Br. at 5.

[7] This motion to suppress was similar to the motion to suppress Black had filed during the pendency of the First Superseding Indictment. Again, we clarify that Black didn't base either motion on Fed. R. Evid. 801(d)(2)(E).

of the defendants' substantive motions, the court issued an order denying the majority of the motions, but the court didn't address Black's motion for evaluations. Although on September 22 the court heard argument on another defendant's motion to suppress, the court didn't then consider Black's motion to suppress as it had intended. On September 24, the court held a *James* hearing on a different defendant's motion—the one Black had moved to join. On September 25, the district court granted Black's motion for drug, alcohol, and psychological evaluations. On September 28, the court scheduled a hearing for October 21 to resume and complete the September 24 *James* hearing. On October 20, Black filed an objection to the government's proposed Fed. R. Evid. 404(b) evidence. On October 23, after the October 21 *James* hearing, Black filed his own motion to exclude statements of coconspirators. On October 26, the court scheduled a hearing for October 29, at which the court planned to address Black's August 14 motion to suppress.

In an October 29 order, the court granted the defendants' (including Black's) motions to exclude coconspirator statements, having determined that the government had "failed to demonstrate by a preponderance of evidence that defendants were engaged in a . . . conspiracy."[8] R. vol. 1 at 437–38. In a footnote at the end of the order, the court directed that "[i]f the government believes it can somehow proceed on count 1 [the conspiracy-to-distribute-cocaine count] in light of the court's ruling herein, it must forthwith file a memorandum supporting its position. Otherwise the

---

[8] To admit coconspirator statements at trial under Fed. R. Evid. 801(d)(2)(E), a trial court must first determine, by a preponderance of the evidence, that a conspiracy existed. *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

court will assume that the government will not proceed with count 1." R. vol. 1 at 438 n.6. Also on October 29, the court held a hearing on Black's motion to suppress.

On October 30, four days before trial, the government moved to dismiss the Second Superseding Indictment without prejudice. The government explained its eve-of-trial motion to dismiss as follows:

> The United States continues to believe that it has sufficient evidence to support the filing and prosecution of the conspiracy charge in count 1 of the Second Superseding Indictment. However, in light of the Court's ruling and comment in footnote six of the [October 29 order], the United States anticipates that if it attempts to proceed on count 1, defense counsel will persuade the Court to dismiss count 1 prior to the trial commencing on November 3, or immediately upon the jury being sworn and jeopardy attaching. While the United States continues to maintain that the Court is without authority to dismiss count 1 based upon defense counsel's previous and continuing requests, the United States has nevertheless concluded that it is in the best interests of the United States to once again request dismissal of the indictment in order to evaluate the Court's [October 29 order] and relevant case law.

R. vol. 1 at 449–50 (footnote omitted). The government further explained:

> The reason for the motion to dismiss is not that the United States wants to harass any of the defendants; to the contrary, the United States filed this motion to ensure that justice is done and that the United States has the benefit of proceeding to trial on its case pursuant to a complete and total understanding of the relevant law.

*Id.* at 451.

On November 2, Black responded to the government's motion, objecting to the proposed dismissal. Black noted "that the charging, dismissing and recharging of this case and the related arresting, releasing and re-arresting of the defendant" was tantamount to harassment, "especially when the government cites the probability of a

loss [at trial] as a primary reason for the dismissal." *Id.* at 455. Along the same line, Black continued as follows:

> For the last two years the defendant has lived under the cloud of suspicion as a citizen accused of wrongdoing. He has been in and out of jail[9] and in and out of court. His life has been thoroughly interrupted and his future hangs in . . . limbo while the government formulated an indictment, dismissed the indictment, regrouped and re[-]indicted over the last two years. The defendant has an interest in finality and a right to move on with his life whether as a freeman acquitted after trial by his peers, or as a convict, knowing that the accusations against him were tested before a jury of his peers. Continuing to keep the defendant without resolution of this matter is unfair to the defendant and his family.

*Id.* at 455–56.

On November 4, the court granted the government's motion to dismiss. The court concluded that the government had no ill purpose in seeking dismissal. Rather, the court concluded that "the dismissal is sought so that the government may either decide to continue with one large conspiracy or to break up the conspiracy count into smaller conspiracies." R. suppl. vol. 1 at 205. The court expressed some misgivings about the situation, however, noting that it was "not necessarily pleased with continuing the case." *Id.* Ultimately, though, the court found "that the government's reasons in seeking a dismissal, without prejudice, in this case are valid and the government is not seeking to harass defendants by moving to dismiss the indictment." *Id.* at 206.

---

[9] As best we can tell from the appellate record, Black was detained from December 21, 2007, until July 30, 2008, and from June 18, 2009, until November 4, 2009. He wasn't detained during this third period, beginning with the government's Fourth Superseding Indictment.

Thus, a total of 5 months and 22 days elapsed between May 13, 2009 (when the government charged Black under the Second Superseding Indictment), and November 4, 2009 (when the court dismissed the charges against Black without prejudice).

### 3. May 25, 2011–April 3, 2012: Fourth & Fifth Superseding Indictments (10 months, 9 days)

On May 25, 2011, the government filed a narrowed Fourth Superseding Indictment,[10] charging 3 defendants with 26 criminal offenses.[11] On August 6, Black was arrested.[12] On August 9, the court set Black's jury trial for October 11. On

---

[10] The government had previously filed a Third Superseding Indictment, which charged two of the defendants—who had also been charged under the Second Superseding Indictment—with 88 crimes, including conspiring to distribute cocaine. The two defendants subject to the Third Superseding Indictment pleaded guilty to the conspiracy count. Because the Third Superseding Indictment didn't charge Black, we don't discuss it here.

[11] The Fourth Superseding Indictment charged Black under Count 1 (conspiring to distribute a mixture and substance containing a detectable amount of cocaine); Counts 2, 5, 8, 9, and 10 (using a telephone in committing or in causing or facilitating the conspiracy); and Counts 20, 22, 23, and 24 (possessing with intent to distribute cocaine). Under the Fourth Superseding Indictment, Black was the only defendant charged with conspiring to distribute cocaine. This differed markedly from the Second Superseding Indictment, which had charged Black and 15 other defendants with conspiring to distribute five kilograms of cocaine.

[12] Both the government and Black assert that Black was arrested on August 8, 2009. *See* Appellant's Opening Br. at 6 ("The government did not arrest Mr. Black on the fourth superseding indictment, and bring him into court on the charges, until August 8, 20[11]."); Appellee's Resp. Br. at 10 ("Black was arrested on August 8, 2011, and arraigned the same day."). But Black's arrest warrant says that Black was arrested on August 6, 2011. We use this date.

On May 4, 2016, Black filed an unopposed motion to supplement the appellate record with six documents, including Black's arrest warrant. Because we find these

10

August 10, Black was arraigned and posted bond, thus securing his release from detention.

On September 7, Black moved to dismiss the Fourth Superseding Indictment based on the government's alleged violation of his constitutional speedy-trial right.[13] Also on September 7, Black moved for a *James* hearing or, alternatively, for an order excluding coconspirator statements if the government sought to provisionally admit the statements.[14]

On September 14, the government filed a Fifth Superseding Indictment, charging 4 defendants with 35 criminal offenses.[15] On September 21, the court set a

---

supplemental documents helpful in putting together this case's timeline, we grant the motion.

[13] Black also argued that the government had violated his statutory right to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). Black's argument under the Act in his motion to dismiss occupied two paragraphs, and Black hasn't reasserted this statutory argument on appeal.

[14] In his motion, Black acknowledged that "[a] *James* hearing has previously been held in this case and the court found that the government had failed to show the requisite interdependence of the alleged conspirators necessary to show the existence of a conspiracy." R. vol. 1 at 490. Black argued, however, that the conspiracy alleged in the Fourth Superseding Indictment was "either a different and distinct conspiracy from that alleged in the previous indictment or, in the alternative, it is the same alleged conspiracy of which the government failed to provide sufficient evidence during the previously held *James* hearing." *Id.* Because of this, Black argued, "[a] new hearing is necessary to ensure that there is sufficient evidence to show the existence of the conspiracy in order to support the use of any alleged co-conspirator's hearsay statements." *Id.*

[15] The Fifth Superseding Indictment charged Black under Count 2 (conspiracy to distribute a mixture and substance containing a detectable amount of cocaine); Counts 4, 8, 12, 15, and 16 (using a telephone to facilitate the conspiracy); and Counts 27, 29, 30, and 31 (possession with intent to distribute cocaine). The Fifth

hearing on Black's motion to dismiss for October 17 and vacated the October 11 trial setting. On September 26, defendant Clerance Reed moved for a *Daubert* hearing to contest the admissibility of proposed testimony of some of the government's expert witnesses, which Black moved to join on September 27. *See generally Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

On October 13, the court vacated the October 17 hearing on Black's motion to dismiss and set Black's trial for December 20. On November 1, the court set Reed's requested *Daubert* hearing for December 13. The court also advised the parties that it would hear argument on Black's motion for a *James* hearing at the December 13 hearing.

On November 3, the court denied Black's motion to dismiss, which he'd based on the government's alleged violation of his Sixth Amendment speedy-trial right. Primarily citing Black's failure to show how the delay in going to trial had prejudiced his defense, the court concluded that Black "has not made out a Sixth Amendment speedy trial violation." R. vol. 1 at 581.[16]

On December 4, the government moved to continue the December 13 motions hearing and the December 20 jury trial. On December 5, the court granted Black's motion to join Reed's motion for a *Daubert* hearing. On December 6, the court

Superseding Indictment didn't include any additional charges against Black, but it did include a new, separate conspiracy count against Michael Biglow, who wasn't charged under the Fourth Superseding Indictment, with conspiring to distribute 500 grams of cocaine.

[16] The court also rejected Black's argument under the Speedy Trial Act.

scheduled a December 12 hearing on the government's motion to continue. At the December 12 hearing, Black was the sole defendant to object to the government's requested continuance. Specifically, Black's lawyer objected as follows: "Your Honor, [Black's objection to the motion is] simply to remain consistent with our previous motion on [the] speedy trial issue and to preserve Mr. Black's standing if he has to appeal that at some other time." R. suppl. vol. 2 at 12–13. After the December 12 hearing, the court granted the government's motion to continue, setting a hearing on the *James* and *Daubert* motions for January 10, 2012, and the jury trial for January 31, 2012.

Near the end of the January 10 hearing, the court asked the parties about possibly continuing the trial to ensure that they had sufficient time to file post-hearing motions and arguments on the *James* and *Daubert* motions. The court also wanted to ensure itself time to resolve the outstanding motions while still leaving the parties sufficient time to prepare for trial. Although the court was uneasy about the timeline, it noted that if any of the defendants wanted to go to trial on January 31 as planned, it would "figure out some way to get it done." R. vol. 3 at 334. The court granted a brief recess to allow the defendants time to decide whether they desired a continuance or wanted to assert their speedy-trial right. After the recess, Black alone objected to the continuance, his lawyer this time stating as follows:

> Your Honor, as you know, we've previously filed a motion for speedy trial based on constitutional speedy trial rights, which the Court has overruled. Solely in order to make sure that I'm not putting myself in a bad position if this ever gets to the Tenth Circuit, Mr. Black wishes to reassert that right and introduce a pro forma objection to any

13

continuance. As I said, Judge, it's only to—I don't want to undermine that position if I ever have to get in front of the Tenth Circuit on it.

*Id.* at 335. Notwithstanding Black's objection, the court reset the trial for April 3.

Between mid-January and mid-February, the defendants and the government filed motions addressing the *James* and *Daubert* motions. On February 22, the court partly granted Black's (and the other defendants') *James* motion. Specifically, the court limited who qualified as coconspirators. In doing so, the court acknowledged that its ruling created "a practical problem" for the defendants' trial. R. vol. 1 at 615. Because only two of the four defendants were charged with conspiring to distribute cocaine (and those two, Black and Biglow, were charged in separate conspiracy counts), the court faced a problem of explaining to the jury "how to consider, or not consider, the [coconspirator statements] as to each defendant." *Id.* The court directed the government to propose by March 2 its solution to this problem "in the form of an instruction or instructions which will ensure that the jurors will properly consider the calls." *Id.* Likewise, the court gave the defendants until March 12 to respond to the government's proposed jury instructions. Offering its own possible solution, the court advised that "the government may wish to consider severance of [the defendants not facing conspiracy charges]." *Id.* Despite the court's directions, the government failed to submit any jury instructions by the March 2 deadline.

On March 12, despite having received no government-proposed jury instructions, Biglow still filed his own proposed jury instructions to ensure compliance with the court's order. That same day, Biglow and Reed moved to sever

14

their trials. On March 14, the government belatedly filed its proposed jury instructions. The government acknowledged that it was "late in the presentation of this suggestion." *Id.* at 626.

On March 15, the court denied the defendants' motions for a *Daubert* hearing. On March 16, Reed and Biglow responded to the government's proposed jury instructions. On March 19, the court scheduled a status conference for March 28. On March 21, Black moved to join three of his codefendants' filings: Biglow's motion to sever, Biglow's proposed jury instructions, and Reed's response to the government's proposed jury instructions. On March 25, the government responded to the motions to sever.

On March 26, the court partially granted and denied the defendants' motions to sever.[17] The court decided to "sever Reed and Reynolds from the trial of Biglow and Black" because only Biglow and Black were facing conspiracy charges. *Id.* at 666. The court also set an April 3 trial date for Biglow and Black, but it didn't set a trial date for Reed and Reynolds.

After a March 28 status conference, Biglow's and Black's trial began on April 3. On April 12, a jury found Black guilty of all the charges against him.

Thus, a total of 10 months and 9 days elapsed between May 25, 2011 (when the government charged Black under the Fourth Superseding Indictment), and April 3, 2012 (when Black's jury trial began).

---

[17] In the same order, the court granted in part and denied in part Black's motion to join the defendants' motions.

## B.    Sentencing

On April 30, 2015, the court sentenced Black. Under Black's Amended Presentence Investigation Report (PSR), the probation officer recommended sentencing Black as a career-offender under U.S.S.G. § 4B1.1(b). Treating his instant cocaine-conspiracy conviction as punishable by life imprisonment, the PSR calculated Black's total offense level as 37 and his criminal history category as VI.[18] *See* U.S.S.G. § 4B1.1(b)(1). As qualifying controlled-substance offenses, the PSR relied on Black's 1996 conviction for possessing with intent to distribute cocaine base and his 2003 conviction for unlawfully using a communication facility in the commission of a felony. *See* U.S.S.G. § 4B1.1(a) (noting that "[a] defendant is a career offender" if, among other things, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense"). With a total offense level of 37 and criminal-history category of VI, the PSR calculated Black's advisory Guidelines range for imprisonment as 360 months to life. Black didn't object to being sentenced under U.S.S.G. § 4B1.1(b)(1).

At Black's April 30 sentencing hearing, the court sentenced Black to 360 months' imprisonment. At the conclusion of the hearing, the court said:

---

[18] Otherwise, Black would have had a base offense level of 24 for conspiring to distribute 656.6 grams of powder cocaine, see U.S.S.G. § 2D1.1(c)(8) (providing a base offense level of 24 for offenses involving "[a]t least 500 G but less than 2 KG of Cocaine"), and a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1. In addition, with 11 qualifying criminal-history points, Black would have had a criminal-history category of V. This would have led to an advisory Guidelines range of 110 to 137 months' imprisonment.

I want to make something clear on the record, though. What I said about the sentence should not be—if this case goes up on appeal, I don't want some circuit judge, or more likely some circuit judge's law clerk, thinking that I would have imposed a lesser sentence in this case if I could have, because I think that a 360-month sentence is appropriate and that's what I would have imposed.

R. vol. 3 at 1460. Black timely appealed.

## DISCUSSION

On appeal, Black argues that the district court erroneously calculated his advisory Guidelines range and that the government violated his Sixth Amendment right to a speedy trial. We conclude that the government didn't violate Black's constitutional right to a speedy trial, but we vacate Black's sentence and remand for resentencing because the district court plainly erred in calculating Black's advisory Guidelines range.

## A.     Sentencing Error

The parties agree that the district court plainly erred in calculating Black's advisory Guidelines range and that we should remand for resentencing. While we agree, we briefly summarize the error below.

Black argues that the district court erroneously calculated his advisory Guidelines range at 360 months' imprisonment to life. Specifically, Black argues that the district court and the PSR incorrectly selected a total offense level of 37 under U.S.S.G. § 4B1.1(b)(1). Because Black failed to object to this alleged error in the district court, we review the sentence for plain error. *United States v. Rosales-Miranda*, 755 F.3d 1253, 1257 (10th Cir. 2014). Thus, Black must demonstrate "that

17

(1) the district court erred; (2) the error was plain; (3) the error affects the defendant's substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014).

The PSR and district court erred by selecting a total offense level of 37 under U.S.S.G. § 4B1.1(b)(1).[19] To apply that offense level, Black's cocaine-conspiracy conviction would have had to carry with it a statutory maximum sentence of life imprisonment. Under that circumstance, Black's maximum sentence would have been life imprisonment—as designated under U.S.S.G. § 4B1.1(b)(1). But because the government charged Black under 21 U.S.C. §§ 841(a)(1) and 846, his offense was punishable by a statutory maximum of 30 years under 21 U.S.C. § 841(b)(1)(C), leaving his proper total offense level at 34, not 37.[20] *See* U.S.S.G. § 4B1.1(b)(2).

---

[19] The court's mistake likely arose from relying on the PSR, which says that Black was convicted under 21 U.S.C. §§ 841(b)(1)(B) and 846, requiring a statutory sentencing range of 10 years to life imprisonment. But the Fifth Superseding Indictment didn't charge a level of cocaine-weight, and looking at the verdict form we see that the jury didn't find one as would be necessary to increase the mandatory, statutory sentencing range. *See Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013) ("Any fact that, by law, increases the penalty for a crime is an element that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an element that must be submitted to the jury." (quotation marks and citation omitted)); *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10 (2000) ("[F]acts that expose a defendant to a punishment greater than that otherwise legally prescribed [a]re by definition 'elements' of a separate legal offense.").

[20] The only way a conviction—like Black's—under 21 U.S.C. §§ 841(a)(1) and 846 could be punished by life imprisonment would be if use of the drugs caused a

Using a corrected total offense level of 34, U.S.S.G. § 4B1.1(b)(2), and a criminal history category of VI, U.S.S.G. § 4B1.1(b), Black's advisory Guidelines range should have been 262 to 327 months' imprisonment.

When a district court plainly errs in this fashion, we presume the defendant meets the third and fourth elements of the plain-error standard. *See Sabillon-Umana*, 772 F.3d at 1334. The government concedes error and doesn't attempt to rebut this presumption. We therefore remand for resentencing.[21]

**B.      Violation of Black's Sixth Amendment Right to a Speedy Trial**

Black also argues on appeal that he was denied his Sixth Amendment right to a speedy trial. We disagree, concluding that despite the lengthy delay in the government's prosecution of the cocaine conspiracy, Black suffered no prejudice and failed to promptly and forcefully assert his speedy-trial right.

---

death or serious bodily injury. 21 U.S.C. § 841(b)(1)(C). No one contends that Black's case involves those factors.

[21] Although the district court said at sentencing that it would have imposed the same 360-month sentence regardless of the appropriate advisory Guidelines range, the government doesn't assert that Black fails to satisfy the third or fourth elements of plain-error review. We agree with the government that "the district court's starting point was skewed" and, as a result, "a reasonable probability exists that the sentence is skewed too." Appellee's Resp. Br. at 23; *see Rosales-Miranda*, 755 F.3d at 1259 ("[B]ecause the Guidelines exert their force whenever a district court complies with the federal sentencing scheme by first calculating the Guidelines range, a miscalculation in the Guidelines range runs the risk of affecting the ultimate sentence *regardless of* whether the court ultimately imposes a sentence within or outside that range." (emphasis in original)). Especially because the district court's 360-month sentence would constitute an upward departure from the correct advisory Guidelines range, resentencing is appropriate here.

Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "[A]lthough the [speedy-trial] right is somewhat amorphous, the remedy is severe: dismissal of the indictment" with prejudice. *United States v. Margheim*, 770 F.3d 1312, 1325 (10th Cir. 2014) (first alteration in original) (quoting *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010)); *see United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009) ("[W]e also consider Toombs's Sixth Amendment speedy trial claim, which, if successful, would require the district court to dismiss the case with prejudice."). "We review [a defendant's] Sixth Amendment claim de novo, but accept the district court's factual determinations unless clear error is shown." *United States v. Gould*, 672 F.3d 930, 935 (10th Cir. 2012).

In determining whether a trial delay[22] violated a defendant's Sixth Amendment right to a speedy trial, we balance four factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). While "[n]o single factor is determinative or necessary," "all four are considered to determine whether a violation has occurred." *Seltzer*, 595 F.3d at 1176.

---

[22] We use the term "delay" throughout our analysis, in keeping with *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972). Although "delay" has negative connotations, we note that unjustified delays weigh against the government but justified ones don't.

20

### 1. Length of Delay

Our analysis under the first factor is a "double inquiry." *Id.* "First, simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Id.* (quotation marks and alteration omitted). "Second, if the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* (quotation marks and alteration omitted). Here, the parties agree that the delay in trying Black appropriately triggers a *Barker* analysis and that the first factor weighs in Black's favor. We agree, but we still separately calculate the length of delay since it matters in our analysis.

The constitutional right to a speedy trial "attaches when the defendant is arrested or indicted, whichever comes first." *Id.* (quoting *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004)). The endpoint of the constitutional speedy-trial period is the beginning of the defendant's trial. *See United States v. Larson*, 627 F.3d 1198, 1209 (10th Cir. 2010) (calculating delay as 31 months where the defendant "was indicted on August 16, 2006, but his trial did not commence until March 23, 2009"). Importantly here, "[o]nce charges are dismissed, the speedy trial guarantee is no longer applicable." *United States v. MacDonald*, 456 U.S. 1, 8 (1982).[23] In other

_____

[23] The Supreme Court elaborated on the reasoning behind this rule of law:

> [When charges have been dismissed], the formerly accused is, at most, in the same position as any other subject of a criminal investigation.

words, in calculating the length of delay, we don't count any period between dismissal and re-indictment. Using this measure, the parties say that the total delay here was about 23 months. Looking at the three periods during which an indictment was pending against Black—outlined at length above—we agree, calculating a delay of about 23-and-a-half months.

Under the first part of our required double inquiry, we agree with the parties that a delay of over 23 months is sufficient to trigger an analysis under the remaining *Barker* factors. *See Margheim*, 770 F.3d at 1326 (concluding that a 23-month delay was presumptively prejudicial, thereby triggering an analysis under the *Barker* factors). Under the second part of our double inquiry, we conclude that the length-of-the-delay factor weighs heavily in Black's favor. *See id.* (concluding that a 23-month delay meant that the first *Barker* factor "weigh[ed] entirely" in the defendant's favor). Because a one-year delay triggers a *Barker* analysis, see *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) ("Delays approaching one year generally

---

Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life. This is true whether or not charges have been filed and then dismissed. . . . But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, a citizen suffers no restraints on his liberty and is no longer the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer. Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation.

*MacDonald*, 456 U.S. at 8–9 (quotation marks and citation omitted).

satisfy the requirement of presumptive prejudice."), the nearly two-year delay that Black experienced unquestionably favors Black.

### 2. Reason for the Delay

"It is incumbent upon the government to present acceptable reasons for the delay." *Margheim*, 770 F.3d at 1326. "The reason for a delay weighs against the government in proportion to the degree to which the government caused the delay. A deliberate attempt to delay a trial in order to secure a strategic advantage will weigh heavily against the government, while valid reasons will justify a delay." *Batie*, 433 F.3d at 1291 (citing *Barker*, 407 U.S. at 531); *see id.* ("Between these two poles lie many reasons for delays for which the government bears responsibility, even when the government did not intend the delays."). But "continuances and other motions filed by the defendant do not weigh against the government." *See id.* (citing *United States v. Tranakos*, 911 F.2d 1422, 1428 (10th Cir. 1990)).

We conclude that this factor doesn't weigh against the government. In doing so, we follow our approach above and divide the reason-for-the-delay discussion into the three periods during which an indictment was pending against Black.

### i. December 19, 2007–July 30, 2008: First Superseding Indictment (7 months, 11 days)

The bulk of the delay during the first period of Black's indictment—the time between the government's filing of the First Superseding Indictment and the court's dismissal of the First Superseding Indictment almost seven-and-a-half months later— is attributable to Black. That said, Black argues that the 50 days between his

23

indictment (December 19, 2007) and his motion to continue his trial (February 7, 2008) are attributable to the government. In response, the government notes that during that interval it arrested and arraigned eight other defendants. "Under these circumstances," the government argues, "no 'delay' occurred in any sense of the word because the case was being expeditiously and efficiently processed by the government and the district court in conformity with regular procedures." Appellee's Resp. Br. at 31. Even if we consider as a delay the 50 days between Black's indictment and his motion to continue, the government argues that the delay was "valid and justified in light of the manifest necessity of arresting the defendants and arraigning them for a joint trial." *Id.*

Although the government was busy pursuing multiple defendants during this 50-day period, the delay resulting from the government's need to arrest and arraign multiple defendants in a multi-defendant case wasn't Black's fault. Black made no motion delaying his trial until February 7, 2008. Between December 19, 2007, and February 7, 2008, Black can't be said to have delayed his otherwise speedy trial. That said, the government is correct that its delay was justified given the nature of the case and the necessity of arresting and arraigning the remaining defendants. Black seems to agree, noting that this 50-day delay should weigh against the government, "albeit not strongly." Appellant's Opening Br. at 33. But because the government was completely justified in the 50-day delay between December 19, 2007, and February 7, 2008, we don't weigh that period against the government at all. *See Tranakos*, 911 F.2d at 1428 ("Delay due to the unavailability of a necessary individual is justified,

24

so the delay caused by [a] codefendant['s] . . . unavailability shall not be weighed against the government.").

Black concedes that the remainder of the first period's delays can't be counted against the government. Because Black caused these delays by moving to suppress evidence, withdrawing his motion to suppress pending plea negotiations, pleading guilty, and withdrawing his guilty plea, we agree. After allowing Black to withdraw his guilty plea, the court immediately dismissed the charges against Black without prejudice.

Of this 7-month, 11-day period, then, the government isn't responsible for any delay, Black is responsible for more than five months of delay,[24] and a 50-day delay doesn't count against either party.[25]

### ii.     May 13, 2009–November 4, 2009: Second Superseding Indictment (5 months, 22 days)

Black admits that the bulk of the nearly six-month delay during this second period is attributable to him. We agree. Between July 23, 2009 (when Black filed a motion for drug, alcohol, and psychological evaluations) and October 30 (when the government filed a motion to continue or, alternatively, to dismiss the charges in the Second Superseding Indictment without prejudice) the court entertained numerous,

---

[24] Specifically, Black was responsible for the delay from February 7, 2008, until July 30, 2008 (more than five months).

[25] This 50-day delay represents the time between December 19, 2007, and February 6, 2008.

25

substantive motions from all of the defendants, including motions that Black made or joined. Thus, we wouldn't typically weigh this time against the government.

Still, despite conceding that much of this second-period delay resulted from his motions, Black argues that the delay should still be counted against the government.[26] He contends that the government, in its Second Superseding

---

[26] The government asserts that Black's argument should fail for three reasons. First, it argues that "Black did not assert this claim as a basis for relief before the district court." Appellee's Resp. Br. at 32. As a result, the government argues that he can only prevail if he shows plain error. *See id.* (citing *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011)). Looking at Black's motion to dismiss in the district court, we see that Black did in fact make a similar argument. For example, Black argued that the government moved to dismiss the Second Superseding Indictment because the government was trying to remedy the fallout from its overcharging:

> At least with regard to the delay resulting from the second dismissal of the charges against Mr. Black, the delay was sought in order for the government to obtain an advantage over the defendants by denying them a potential victory which would have resulted *from the charging decisions made by the State*.

R. vol. 1 at 480 (emphasis added). Although this isn't the exact argument that Black asserts on appeal, it is close enough for us to consider the merits of Black's argument. We interpret Black's argument on appeal as a fleshed-out version of the argument he made to the district court, not a brand-new legal theory. *Cf. Gould*, 672 F.3d at 937–38 (prohibiting defendant from arguing on appeal that the government's delay was purposefully caused where in the district court the defendant argued only that the government's negligence or inadvertence caused the delay).

Second, the government argues that Black's argument should fail because his "alleged reason for the delay, i.e., that the indictment was an overreach, is not a recognized reason for attributing delay to the government in the Sixth Amendment speedy trial context." Appellee's Resp. Br. at 33. True, Black's argument is a novel one in our circuit. But the government cites no authority for the proposition that, because an argument is new, it necessarily fails.

Third, the government argues that Black's argument should fail because the Second Superseding Indictment wasn't an overreach. This assertion goes to the

26

Indictment, charged the cocaine-conspiracy count more broadly than the law allows. Indeed, the Second Superseding Indictment charged 16 defendants under the same conspiracy count, up from the First Superseding Indictment's 8 defendants and the Third and Fifth Superseding Indictments' 2 defendants. Had the government proceeded with a complete and total understanding of the relevant conspiracy law, "as it eventually did on the third go-round," Black argues that "the motions could have been resolved with dispatch." Appellant's Opening Br. at 35. In sum, Black argues that the second-period delay should weigh against the government because the Second Superseding Indictment "was a large and unjustified overreach by the prosecution." Appellant's Opening Br. at 34. Initially, we sympathize with Black. We can't simply ignore that the government filed *six* indictments in this case. Broadly charging the conspiracy count beyond the law's limits—at least according to the district court and unchallenged on appeal—led to the bulk of the defendants' motions.

Between the First Superseding Indictment and the Fifth Superseding Indictment, the government's conspiracy charges varied widely. The First Superseding Indictment charged eight defendants with conspiring to distribute over five kilograms of cocaine. The Second Superseding Indictment expanded the conspiracy count, charging 16 defendants with conspiring to distribute over five kilograms of cocaine. When the district court concluded, after a *James* hearing, that

substance of Black's argument, and we address below whether the government's approach to prosecuting the conspiracy in this case was indeed an overreach.

the government had insufficient evidence of a conspiracy among all of the defendants—a strong sign that the government had overcharged the conspiracy in its Second Superseding Indictment—the government retreated by requesting that the court dismiss the Second Superseding Indictment. After the dismissal, the government filed a Third Superseding Indictment against two defendants rather than 16, neither of whom were Black, charging both with conspiring to distribute cocaine.[27] After both defendants subject to the Third Superseding Indictment pleaded guilty, the government obtained a Fourth Superseding Indictment, which charged Black—and no named coconspirators—with conspiring to distribute a mixture and substance containing a detectable amount of cocaine.

Even after all of that, the government obtained a Fifth Superseding Indictment, adding one defendant, whom the government charged under a separate conspiracy count, with conspiring to distribute at least 500 grams of cocaine. Thus, the charged conspiracy ultimately grew from 8 defendants to 16, then shrank from 16 to 4. The charged cocaine weight also swung between extremes—initially, the government charged Black with conspiring to distribute five kilograms of cocaine, but later reduced it to a detectable amount of cocaine.

Because the government couldn't sustain its broad conspiracy count charged in the Second Superseding Indictment, we are inclined to weigh the second *Barker* factor slightly against the government for this period, or at least weigh the factor less

---

[27] Because the Third Superseding Indictment isn't in the appellate record, we can't say whether it charged the two defendants with conspiring to distribute a detectable amount of cocaine, 500 grams of cocaine, or some other amount.

28

forcefully against Black, whose motions largely responded to the overcharging. But Black didn't just file motions related to the conspiracy charge. He sponsored or joined several motions that had nothing to do with the government's prosecution of the conspiracy charge. Specifically, on July 23, 2009, Black filed a motion requesting drug, alcohol, and psychological evaluations. On August 14, while the evaluations motion was still pending, Black filed a motion to suppress statements he had made to law-enforcement officers and statements he had made during intercepted phone conversations. Neither the motion for the evaluations nor the motion to suppress mentioned or involved the Second Superseding Indictment's conspiracy charge. On September 15, the court set a hearing on Black's motion to suppress for September 22, but the record doesn't reveal whether the hearing occurred. On September 25, the court granted Black's request for the evaluations, but the motion to suppress remained unresolved. On October 29, the court eventually held a hearing on Black's motion to suppress. Because these two motions, which were pending between July 23 and October 29, were unrelated to the government's conspiracy count—the only count Black alleges was an overreach—the time during the pendency of these motions is properly counted against Black. Thus, despite the government's charging too broad a conspiracy count, Black still remains responsible for a delay of over three months.

This leaves us with two other delays unaccounted for during this second period. The government hasn't accounted for either. First, the government hasn't explained the delay between the day that it charged Black under the Second

Superseding Indictment (May 13, 2009) and the day that Black filed his first substantive motion (July 23, 2009). Second, the government has failed to explain the delay between its motion to continue or, alternatively, to dismiss the Second Superseding Indictment without prejudice (October 30, 2009) and the court's ultimate dismissal (November 4, 2009). We are clear on this point: The burden to account for delays lies squarely with the government. *See Jackson*, 390 F.3d at 1261 ("The Supreme Court places the burden on the state to provide an inculpable explanation for delays in speedy trial claims," (citing *Barker*, 407 U.S. at 531)). Because the government hasn't carried its burden with respect to these two delays, which account for over two months of elapsed time, we weigh this over-two-month delay moderately against the government. *See id.* at 1262 ("[W]hen the petitioner does not argue that the state deliberately delayed his trial and the state does not argue that the petitioner caused the delay, . . . courts must conclude negligence on the part of the government and weigh the second *Barker* factor moderately against the state.").

Thus, we conclude that, of this 5-month, 22-day period, the government is responsible for more than two months of delay,[28] and Black is responsible for more than three months of delay.[29]

---

[28] Specifically, the government was responsible for the delay from May 13, 2009, until July 22, 2009 (over two months), and from October 30, 2009, until November 4, 2009 (five days).

[29] Specifically, Black was responsible for the delay from July 23, 2009, until October 29, 2009 (more than three months).

### iii. May 25, 2011–April 3, 2012: Fourth & Fifth Superseding Indictments (10 months, 9 days)

Black argues that the government is responsible for about six months of delay between the day the government filed its Fourth Superseding Indictment and Black's trial.

Black first argues that the government is responsible for the two-and-a-half-month delay between May 25, 2011 (when the government filed the Fourth Superseding Indictment), and August 8, 2011 (when Black was arrested). Specifically, Black argues that "if the prosecution was negligent in its efforts to bring Mr. Black into court, the time between indictment and his arrest counts against it." Appellant's Opening Br. at 37. He then argues that "[t]he prosecution . . . made no effort to show that Mr. Black was evading arrest and that, if he was, it . . . made diligent efforts to arrest him." *Id.* The government responds by arguing that, because Black didn't assert this particular argument in his motion to dismiss in the district court, we must review it for plain error. And because Black failed to argue plain error, the government says, he has forfeited this argument on appeal. We agree.

Black filed his motion to dismiss on Sixth Amendment grounds about a month after his August 8, 2011 arrest. Yet Black didn't argue in his motion that the government was negligent in arresting him. In fact, Black never argued that the time between the government's filing of its Fourth Superseding Indictment and his arrest counted against the government at all. Of course, that wasn't his burden to bear. Again, the burden is on the government to provide explanations for delays. *Jackson*,

31

390 F.3d at 1261. The government carried its burden in the district court, however, and Black failed to respond with the argument he now attempts to make. In its response to Black's motion to dismiss, the government argued as follows:

> [A] significant portion of the delays in this case were caused by the defendant and his codefendants through the filing of motions, requests for evidentiary hearings, request for a psychological examination, the entry of a plea that was later withdrawn and *the defendant's failure to turn himself in to the court when summoned*."

R. vol. 1 at 525 (emphasis added).

Black never responded to this argument by noting that the government was negligent in arresting him or that the government's characterization of the facts was incorrect. He can't do so now. Were we to address Black's argument, we would have to answer factual questions for the first time on appeal, such as whether the government was negligent in arresting Black, which we won't do. *See Gould*, 672 F.3d at 938 (refusing to address an argument for the first time on appeal because it presented "a fact question"). Thus, we don't count the delay between May 25, 2011, and August 8, 2011, against the government. *See id.* (noting that, "[g]iven the arguments presented before the district court, [the defendant] is now precluded" from making brand-new arguments about the cause of the government's delay). In fact, because Black never responded to the government's argument that he failed to turn himself in when summoned before the district court, any argument he attempts to make on appeal is forfeited.[30] Thus, we are left with the government's assertion that

---

[30] We further note that Black failed to argue plain error in both his opening and reply briefs. Failure to argue plain error on appeal is an entirely independent reason

Black failed to turn himself in when summoned. Because no one claims that Black absconded, we don't weigh this two-and-a-half-month delay against either party.

Although Black argues that the government bears responsibility for the majority of the delay during this period, he accepts responsibility for delays caused by his own motions. On September 7, 2011, Black filed a motion to dismiss the Fourth Superseding Indictment for the government's violation of his speedy-trial right and a motion for a *James* hearing. Black properly concedes that the time between September 7 and November 3, the day that the court denied his motion to dismiss, is properly counted against him. Black also accepts responsibility for the delay between his September 7 motion for a *James* hearing and the government's December 4 motion to continue the December 13 motions hearing and December 20 trial. We agree that this nearly three-month delay is properly attributed to Black.[31]

---

to disregard forfeited arguments on appeal. *See Richison*, 634 F.3d at 1130–31 ("Before us, . . . [the defendant] hasn't even attempted to show how his new legal theory satisfies the plain error standard. And the failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court.").

[31] On September 27, Black also moved to join Defendant Reed's September 26 motion for a *Daubert* hearing. On November 1, the court granted Reed's motion for a *Daubert* hearing, setting the hearing for December 13—thus, the court planned to consider both the *James* and *Daubert* motions at the same hearing. Although the court didn't grant Black's motion to join Reed's *Daubert* motion until December 5, one day after the government moved to continue the December 13 motions hearing, we only count the time between September 7 and December 3 against Black. December 4 and onward is properly counted against the government because of its motion to continue. Thus, the *Daubert* motion is irrelevant to our analysis here.

Although Black accepts responsibility for the delays related to his *James* motion, he argues that the government is responsible for the delay from December 4, 2011, the day the government moved to continue the December 13 *James*/*Daubert* hearing, until January 10, 2012, the day of the rescheduled hearing, because the government moved to continue the original hearing.[32] We agree with Black that this more-than-one-month period is properly counted against the government. The government cites the district court's given reasons for granting the government's motion for a continuance and notes that the delay actually benefitted the defendants, including Black. While that may be so, Black did object and wanted to keep the December 20, 2011 trial setting. Based on his objection, Black didn't need the extra time. Thus, we attribute to the government the delay resulting from the government's motion to continue the December 13 motions hearing and the December 20 trial.

At the rescheduled motions hearing on January 10, 2012, the court suggested that a continuance might be appropriate to allow sufficient time for all of the parties to argue their *James* and *Daubert* motions. Over Black's "pro forma objection," the

---

[32] The government argues that we should apply plain-error review to Black's "claim" that the time between December 4, 2011 (the government's motion to continue), and April 3, 2012 (Black's trial), should be counted against the government. We find it odd that the government argues that Black could have (and should have) made this argument *in his motion to dismiss*, which Black filed on September 7, 2011, long before this delay even took place. *See* Appellee's Resp. Br. at 35 (mentioning Black's "claim" and arguing that "Black did not assert these specific claims as grounds for relief in the district court," citing his September 7 motion to dismiss). We consider Black's objections to the continuances between December 4, 2011, and April 3, 2012, sufficient to show that Black made this particular argument in the district court. Thus, we consider whether the government is responsible for the delay during this period.

34

court temporarily reset the trial for April 3. It is difficult to assign blame for this delay because the court sponsored the continuance. But given Black's objection to the continuance, we must count this time against the government. The government argues that while Black objected to the continuance, his objection was weak and was made only to remain consistent with his earlier-denied motion to dismiss on speedy-trial grounds. Although the objection may well have been weak—an argument we address in our analysis of the third *Barker* factor—Black did object. So we count the period between January 10 and April 3 against the government.

We acknowledge, however, that between January 10 and April 3, Black filed *James* and *Daubert* motions, which stemmed from the January 10 hearing. Because Black filed these motions on the day that the trial was originally supposed to begin (January 31, 2012), we are tempted to agree with the government that Black benefited from the January 10 continuance and that the time between January 10 and April 3 shouldn't count against the government. But we also note that, on February 22, the district court granted the defendants' *James* motions in part and ordered the government to file, by March 2, proposed jury instructions consistent with the court's ruling. From the appellate record, it seems that the government forgot about the court's order. The defendants remembered it, though, and filed the ordered proposed jury instructions. Were we to count the period between January 10 and April 3 against Black, we would be ignoring the government's oversight and punishing Black's timely motions, even if those motions arguably weren't consistent with Black's stance opposing the continuance. This we won't do, especially because Black

35

objected to the January 10 continuance and the district court said that it would "figure out some way" to get the defendants to trial on January 31 if needed. R. vol. 3 at 334. Thus, the period between January 10 and April 3 is properly counted against the government.

We've now allocated responsibility for all of the delay in this third period except for the time between August 8, 2011 (Black's arrest), and September 7, 2011 (the day before Black moved to dismiss the Fourth Superseding Indictment). As with the remaining delay in the second period above, because the government bears the burden of providing inculpable explanations for each delay and hasn't explained this one-month delay, we count this period moderately against the government. *See Jackson*, 390 F.3d at 1262 ("[W]hen the petitioner does not argue that the state deliberately delayed his trial and the state does not argue that the petitioner caused the delay, . . . courts must conclude negligence on the part of the government and weigh the second *Barker* factor moderately against the state.").[33]

Given the above, we conclude that of the 10-month, 9-day delay during this period, Black was responsible for a little less than three months,[34] the government

---

[33] Moreover, the district-court docket shows no activity between August 10, 2011, and September 7, 2011.

[34] Specifically, Black was responsible for the delay from September 7, 2011, until December 3, 2011 (less than three months).

was responsible for about five months,[35] and two-and-a-half months isn't attributable to either party.[36]

### iv. Second-Factor Conclusion

Having assigned responsibility for each delay to either Black or the government, we conclude that the second *Barker* factor, the reason for the delay, doesn't weigh against the government. Of the 23-month delay in bringing Black to trial, we conclude that the government was responsible for about 7 months of delay. Black, on the other hand, was responsible for about 12 months of delay.[37] Because Black was responsible for over 50% of the overall 23-month delay and the government was responsible for about 30%, this factor doesn't weigh against the government. *See Margheim*, 770 F.3d at 1327–28 (noting that defendant requested a 120-day continuance while the government only requested a 37-day continuance, and concluding that "[f]rom a strictly numerical perspective, it is impossible to conclude that the second *Barker* factor is a victory for [the defendant]"); *Gould*, 672 F.3d at 937 ("Thus, in total, [the defendant] bears responsibility for roughly ten percent of the delay, while the government bears responsibility for the remaining ninety percent.

---

[35] Specifically, the government was responsible for the delay from August 8, 2011, until September 6, 2011 (about one month), and from December 4, 2011, until April 3, 2012 (about four months).

[36] This two-and-a-half-month delay represents the time between May 25, 2011, and August 7, 2011.

[37] As noted above, a 50-day delay during the first period and a two-and-a-half-month delay during the third period don't weigh against either party.

Because the government is responsible for the bulk of the delay, this factor weighs against the government.").

We've now numerically assessed the reason-for-the-delay factor. But "in determining how heavily the delay weighs against the government, we must also assess the cause of the delay." *Gould*, 672 F.3d at 937. Although Black is responsible for more of the delay than the government in our case, we address the next step in our analysis. Sometimes the government and the defendant are each responsible for substantial delays. In such cases, even if the defendant is responsible for a majority of the delay, we could weigh the second *Barker* factor against the government if the government delayed the trial to gain an advantage over the defendant or to deprive the defendant of his ability to defend himself at trial. *See Batie*, 433 F.3d at 1291 ("A deliberate attempt to delay a trial in order to secure a strategic advantage will weigh heavily against the government, while valid reasons will justify a delay."). In other words, the second *Barker* factor isn't purely an arithmetic exercise where the party responsible for less of the delay prevails under the factor. The root cause of the delay is equally important.

In *Gould*, for example, we weighed the second *Barker* factor in favor of a defendant, "but not heavily," because while the government was responsible for a majority of the delay, it didn't purposefully cause the delay. *Gould*, 672 F.3d at 937–38. In his opening brief, Black similarly acknowledges that "[t]here was no claim here of purposeful delay." Appellant's Opening Br. at 30. We agree with Black. So,

38

both numerically and otherwise, the second *Barker* factor doesn't weigh against the government at all.

### 3. Defendant's Assertion of His Right

Under the third *Barker* factor, we look to "whether the defendant has actively asserted his right to a speedy trial." *Batie*, 433 F.3d at 1291. While asserting the right at any time is meaningful to our analysis, "[w]e may weigh the frequency and force of the objections." *United States v. Latimer*, 511 F.2d 498, 501 (10th Cir. 1975) (citing *Barker*, 407 U.S. at 529). The third *Barker* factor weighs against a defendant who weakly asserts his speedy-trial right long after he could have, but the factor weighs in favor of a defendant who early, frequently, and forcefully asserts his right. *Compare Seltzer*, 595 F.3d at 1179 (finding that the third factor weighed in favor of a defendant who, without the assistance of counsel, first asserted his speedy-trial right about six months after his indictment, noting that the defendant's "prompt and repeated requests" for a speedy trial "put both the district court and the government on notice that the defendant wished to proceed to a prompt resolution of his case"), *with Margheim*, 770 F.3d at 1328 (finding that the third factor weighed against a defendant when the defendant filed a motion to dismiss 19 months after the indictment, noting that "it is difficult to overlook how late [the defendant's] motions to dismiss the indictment appear on the pretrial timeline"). We conclude that this factor weighs heavily against Black.

Black didn't promptly assert his speedy-trial right. In fact, Black first asserted his speedy-trial right in his September 7, 2011 motion to dismiss the Fourth

Superseding Indictment. On the 23-month-delay timeline, this assertion falls at about the 16-month mark. Although Black had earlier opposed the government's October 30, 2009 motion to dismiss the Second Superseding Indictment, he didn't do so based on speedy-trial grounds. Even if we credited this protest as an assertion of his speedy-trial right, which we don't, it still would have come 13 months after the First Superseding Indictment. We therefore conclude that Black's assertion of his right is far more akin to the defendant's late assertion in *Margheim* than it is to the defendant's prompt assertion in *Seltzer*.

Even when Black asserted his right, the assertions weren't particularly strong. Although Black forcefully moved to dismiss the Fourth Superseding Indictment, his later actions sapped the strength of this original objection. *See Tranakos*, 911 F.2d at 1429 ("We are unimpressed by a defendant who moves for a dismissal on speedy trial grounds when his other conduct indicates a contrary desire."). At a December 12, 2011 hearing on the government's motion to continue Black's trial, Black's counsel objected to the continuance "simply to remain consistent with our previous motion on [the] speedy trial issue and to preserve Mr. Black's standing if he has to appeal that at some other time." R. suppl. vol. 2 at 12–13. We find it hard to accord this assertion of his speedy-trial right much weight. But even this assertion of his speedy-trial right seems strong next to Black's next assertion.

At a motions hearing on January 10, 2012, Black was the only defendant to object to the court's proposed continuance. We reproduce the objection here:

Your Honor, as you know, we've previously filed a motion for speedy trial based on constitutional speedy trial rights, which the Court has overruled. Solely in order to make sure that I'm not putting myself in a bad position if this ever gets to the Tenth Circuit, Mr. Black wishes to reassert that right and introduce a pro forma objection to any continuance. As I said, Judge, it's only to—I don't want to undermine that position if I ever have to get in front of the Tenth Circuit on it.

R. vol. 3 at 335. This assertion of Black's speedy-trial right is especially weak. Black admitted he was *solely* objecting to a continuance to look consistent on appeal, not because he felt his right to a speedy trial had actually been violated at that point. He introduced a "pro forma objection," which *Barker* itself tells us isn't worth much in the speedy-trial calculus. *Barker*, 407 U.S. at 529 (noting that considering the assertion-of-right factor "allow[s] a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection"). Further, Black's pro forma objection followed reassurances from the district court that it would try Black earlier if requested. *See* R. vol. 3 at 334 ("But if any of you want a trial on the 31st, I'll figure out some way to get it done."). But when the district court overruled Black's pro forma objection, Black didn't press the matter. In short, the pro forma objection that Black hoped would help his case on appeal has in fact weakened it.

We conclude that the third *Barker* factor weighs heavily against Black. He failed to promptly assert his speedy-trial right, and his late assertions are particularly weak.

### 4. Prejudice to the Defendant

"The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *Seltzer*, 595 F.3d at 1179 (quoting *Toombs*, 574 F.3d at 1275). Even though we may conclude that a delay is presumptively prejudicial under the first *Barker* factor, we will relieve a defendant of his separate "burden to present specific evidence of prejudice" under the fourth *Barker* factor only if there is evidence of an extreme delay. *United States v. Hicks*, 779 F.3d 1163, 1168 (10th Cir. 2015); *see id.* (noting that a six-year delay would qualify as an extreme delay, which would relieve a defendant of his burden to present evidence of some specific prejudice). Because the delay attributable to the government in this case doesn't even approach one year, Black must "make a particularized showing of prejudice which addresses the interests the speedy trial right was designed to protect." *Id.* at 1169. These interests include "(i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) [the] minimization of the possibility that the defense will be impaired." *Id.* (quoting *Larson*, 627 F.3d 1209) (alteration in original).

To his credit, Black doesn't assert prejudice where there is none. Of course, the length of the delay here was a presumptively prejudicial 23 months. But Black recognizes that he must show more, and he concedes that he can't. In the district court, Black notes that he asserted "anxiety and the deterioration of family relationships, and the inconvenience of counsel visiting with [an alleged coconspirator] (who had by that point pleaded guilty and been moved out of state) in

preparation for trial." Appellant's Opening Br. at 45. Indeed, looking back to his motion to dismiss, we see that Black also argued that he was prejudiced because he had "spent well over two years of his life in a jail cell awaiting trial." R. vol. 1 at 483. But on appeal, Black acknowledges that he can't show "specific, cognizable prejudice." Appellant's Opening Br. at 45. He further notes that "[o]n prejudice, then, there is nothing for present purposes beyond the presumption that arises in the usual case when delay approaches a year, and that increases in force as that period increases, here to about double that amount of time." *Id.* at 46 (citation omitted).

Given this background, we don't weigh the prejudice factor against the government. Even if Black had reasserted all of his arguments from the district court, the prejudice factor wouldn't weigh against the government, because Black has failed to show particularized instances of prejudice in his case. We therefore weigh this factor heavily against Black. *See Gould*, 672 F.3d at 939 ("[F]ailure to show prejudice is nearly fatal to a speedy trial claim.").

### 5.    Balancing

To review, the length-of-the-delay factor weighs heavily against the government, the reason-for-the-delay factor doesn't weigh against the government at all, the assertion-of-the-right factor weighs heavily against Black, and the prejudice factor weighs heavily against Black. Looking at this summary, our balancing job is easy. We conclude that Black has not shown a Sixth Amendment violation.

While there was a substantial delay in this case, Black fails to cite any specific, particularized prejudice resulting from the delay. *See Perez v. Sullivan*, 793

43

F.2d 249, 256 (10th Cir. 1986) ("While a showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, we have great reluctance to find a speedy trial deprivation where there is no prejudice." (citation omitted)). Although in its Second Superseding Indictment the government charged the conspiracy count too broadly, Black failed to promptly and forcefully assert his right to a speedy trial and caused much of the delay with motions unrelated to the conspiracy charge. Nothing about the delay rendered Black unable to mount a defense to the government's charges or suggests that the government attempted to gain an advantage with its motions to dismiss and multiple indictments. After reviewing the record, we see no error in the district court's finding that the government acted in good faith. Because Black failed to assert his speedy-trial right early and forcefully, we can't even say that he was convinced that the government had violated his Sixth Amendment right to a speedy trial. On balance, the *Barker* factors weigh in the government's favor. We therefore conclude that the government didn't violate Black's Sixth Amendment right to a speedy trial.

## CONCLUSION

Despite the long delay between the First Superseding Indictment and trial, Black failed to show prejudice and weakly asserted his speedy-trial right long after he was first indicted. Thus, he wasn't denied his constitutional right to a speedy trial.

But the district court plainly erred when it treated Black's conspiracy conviction as one punishable by life imprisonment. This mistake increased Black's total offense level by three levels. Because the district court plainly erred in

44

calculating the advisory Guidelines range, resentencing is appropriate. We vacate Black's sentence and remand for resentencing in accordance with this opinion.